1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSE ONTIVEROS,

11                                          NO. CIV. S-08-567 LKK/DAD
              Plaintiff,

12        v.

13                                              O R D E R
     ROBERT ZAMORA and ZAMORA
14   AUTOMOTIVE GROUP (form
     unknown),

15
              Defendants.
16   _____/

17        Plaintiff is a former employee of defendant Zamora Automotive

18   Group and/or Robert Zamora ("Zamora"), who has brought suit on

19   behalf of himself and a putative class alleging violations of state

20   labor laws and of the California Unfair Competition law, Cal. Bus.

21   & Prof. Code §§ 1700 et seq. Also named as defendants are several

22   other business entities alleged to comprise the Zamora Automotive

23   Group. Pending before the court is Zamora's and Zamora Automotive

24   Group's motion for judgment on the pleadings. The court resolves

25   the motion on the papers.

26   ////

                                       1

# I. BACKGROUND[1]

Plaintiff alleges that he and the other members of the purported class were employed as automobile mechanics by Zamora and Zamora Automotive Group and were non-exempt employees. Plaintiff has brought suit on ten causes of action, alleging that defendants failed to pay overtime wages, to pay minimum wages, to provide rest periods, to pay timely wages, to provide accurate, itemized wage statements, and to pay reporting time wages. Plaintiff also alleges that defendants obtained unlawful "kickbacks" by requiring employees to contribute a portion of their wages to defendants' payment of other employees. Finally, plaintiff alleges that defendants' violations of the California Labor Code and of federal I.R.S. and Fair Labor Standards laws constituted unlawful business practices under California Business and Professions Code §§ 1700 et seq. and that all of the alleged misconduct constitute unfair business practice under the same statute.[2] Plaintiff seeks civil

---

[1]All allegations described herein derive from plaintiff's Second Amended Complaint and are taken as true for the purposes of this motion only.

[2]Plaintiff asserts and defendants do not dispute that jurisdiction in this court is proper under the Class Action Fairness Act, 28 U.S.C. § 1332. Plaintiff also asserts that jurisdiction is proper under 28 U.S.C. § 1331, although the court is not inclined to agree given that the only invocation of federal law in the complaint is that alleged violations of federal statutes provide some of the grounds for plaintiff's claims under the state Unfair Competition Law. See Rains v. Criterion Sys., Inc., 80 F.3d 339, 346 (9th Cir. 1996) ("When a claim can be supported by alternative and independent theories -- one of which is a state law theory and one of which is a federal law theory -- federal question jurisdiction does not attach because federal law is not a necessary element of the claim.").

1  penalties under California Labor Code §§ 2698 et seq. (the Private
2  Attorneys General Act) and other statutes, compensatory damages,
3  restitution and other injunctive relief, a declaratory judgment,
4  and attorneys' fees.

5      Plaintiff makes various allegations regarding defendant
6  Zamora's role in the events giving rise to the causes of action.
7  He alleges that Zamora "owns and controls" Zamora Automotive Group
8  and "is a joint employer of the class" or, alternatively, that it
9  is an alter-ego, non-registered dba of Zamora. Second Amended
10 Complaint ("SAC") ¶¶ 11, 12. Zamora is also alleged to "exercise[]
11 control over the labor practices of Zamora Automotive Group and [to
12 have] caused the violations" set forth in the complaint. Id. ¶ 11.

13     Plaintiff further alleges that the automobile dealerships
14 named as defendants were agents of Zamora. Id.; see also id. ¶ 23.
15 He alleges that Zamora was Vice President, Secretary, and Chief
16 Financial Officers of all or almost all of the named dealerships
17 and that some of them were registered dbas of Zamora. Id. ¶ 13.
18 Zamora is alleged to own over fifty percent of the shares of some
19 of these dealerships and to be responsible for setting policies
20 concerning the payment of wages at all of them, which was the cause
21 of the harms claimed by plaintiff. Id. ¶¶ 14-22. Essentially,
22 plaintiff's theory is that "[a]lthough Robert Zamora has set up an
23 elaborate scheme of corporations, all of the employees are managed
24 and employed as though it were one business operated by Robert
25 Zamora." Id. ¶ 36.
26 ////

1   **II.  STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS UNDER**

2   **FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

3        A motion for judgment on the pleadings may be brought "[a]fter

4   the pleadings are closed but within such time as to not delay the

5   trial." Fed. R. Civ. P. 12(c). All allegations of fact by the party

6   opposing a motion for judgment on the pleadings are accepted as

7   true. Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th

8   Cir. 1984). A "dismissal on the pleadings for failure to state a

9   claim is proper only if 'the movant clearly establishes that no

10  material issue of fact remains to be resolved and that he is

11  entitled to judgment as a matter of law." ' Id. (quoting 5 C.

12  Wright & A. Miller, Federal Practice and Procedure: Civil § 1368,

13  at 690 (1969)); see also McGlinchy v. Shell Chemical Co., 845 F.2d

14  802, 810 (9th Cir. 1988).

15       When a Rule 12(c) motion is used to raise the defense of

16  failure to state a claim, the motion is subject to the same test

17  as a motion under Rule 12(b)(6). McGlinchy, 845 F.2d at 810; Aldabe

18  v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1989). Thus, the motion

19  will be granted only if the movant establishes that "no relief

20  could be granted under any set of facts that could be proven

21  consistent with the allegations." Hishon v. King & Spalding, 467

22  U.S. 69, 73 (1984); see also Conley v. Gibson, 355 U.S. 41, 45-46

23  (1957); Newman v. Universal Pictures, 813 F.2d 1519, 1521-22 (9th

24  Cir. 1987). The court must accept all material allegations of the

25  complaint as true and all doubts must be resolved in the light most

26  favorable to the plaintiff. N.L. Indus. Inc. v. Kaplan, 792 F.2d

1  896, 898 (9th Cir. 1986).

2  **III. ANALYSIS**

3  Defendants move for judgment on the pleadings on two grounds.

4  First, they contend that the compensation scheme they utilized for

5  plaintiff and the purported other class members is lawful, as a

6  matter of law. Second, defendant Zamora argues that plaintiff has

7  not adequately pled a basis for his liability, as a corporate

8  officer cannot be liable for the violations of the Labor Code

9  plaintiff alleges. The court considers each argument in turn. For

10  the reasons stated herein, the court denies the motion in part and

11  grants it in part.

12  **A.    Lawfulness of the Compensation Scheme**

13  Although not pled in detail in plaintiff's complaint,

14  plaintiff and defendants both agree that the corporate defendants

15  used a "flag rate" or "piece rate" compensation system for the

16  automobile mechanics they employed. See Mot. for J. on the

17  Pleadings at 8-10; Opp'n to Mot. for J. on the Pleadings at 7-9.

18  This compensation method pays employees set rates for completing

19  certain tasks or producing units of goods. Cal. Div. of Labor

20  Standards Enforcement Policies & Interpretations Manual ("DLSE

21  Manual") § 2.5.1.[3] For example, under a piece rate system, a

22

23  [3]Defendants request that the court take judicial notice of the
   DLSE Manual. A court may take judicial notice of a fact not subject

24  to reasonable dispute, either because the fact is generally known
   within the territorial jurisdiction of the trial court or because

25  the fact is capable of accurate and ready determination from
   sources whose accuracy cannot reasonably questioned. Fed. R. Evid.

26  201(b). A court shall take judicial notice of a judicially
   noticeable fact "if requested by a party and supplied with the

5

1   mechanic would be paid a fixed amount per type of automotive repair

2   he completed based on the estimated time it would take to perform

3   that repair, regardless of how much time it actually took him. Id.

4   § 2.5.2(1) ("Examples of piece rate plans [include]: Automobile

5   mechanics paid on a 'book rate' (i.e., brake job, one hour and

6   fifty minutes, tune-up, one hour, etc.) usually based on the

7   Chilton Manual or similar"). Plaintiff alleges that this payment

8   system violates California labor laws because it does not

9   compensate employees for work they perform that is not "piece"

10  work, such as attending meetings and training sessions, setting up

11  their work stations, and having a state-mandated work break. See

12  Opp'n to Mot. for J. on the Pleadings at 8-9. Defendants argue that

13  the piece rate system is lawful, as a matter of law, so long as the

14  average hourly compensation for employees does not fall below the

15  minimum wage.

16      It appears that plaintiff has alleged a valid theory of

17  recovery on this issue such that judgment on the pleadings is not

18  appropriate. In Armenta v. Osmose, Inc., 135 Cal. App. 4th 314

19  (2005), the California Court of Appeals held that an employer who

20  uses an averaging method to determine employees' hourly wages may

21  violate the state minimum wage law, because the law requires

22  _____

23  necessary information."  Fed. R. Evid. 210(d).

24      Here, the DLSE Manual is a public document, and therefore the
    court is able to accurately and readily determine its contents.
    Defendants have complied with Federal Rule of Evidence 201(d) by
25  requesting judicial notice and supplying the court with a copy of
    the applicable sections of the DLSE Manual. Therefore, the court
26  takes judicial notice of the DLSE Manual.

1  employees to be paid for each hour worked. In <u>Armenta</u>, the
2  plaintiffs were employed by a company that maintained utility poles
3  for utility companies. 135 Cal. App. 4th at 316. Employees' time
4  was considered "productive," if it directly related to maintaining
5  the poles, or "nonproductive," which included tasks like travel
6  time, engaging in safety meetings, loading vehicles, completing
7  paperwork, and maintaining the vehicles. <u>Id.</u> at 317-18. Employees
8  were only paid for "productive" time, but the employer argued that
9  this did not violate state minimum wage laws because the amount
10 compensated for "productive" time averaged to an hourly wage that
11 exceeded the state minimum. <u>Id.</u> at 319.

12      The Court of Appeals rejected this theory. Although an
13 averaging method may be lawful under the federal Fair Labor
14 Standards Act and although California labor law was partially
15 patterned on federal law, the California statutes "reveal[] a clear
16 legislative intent to protect the minimum wage rights of California
17 employees to a greater extent than federally." <u>Id.</u> at 322-24. The
18 court observed that California Wage Order No. 4, which is the
19 relevant state regulation, provided that employees be paid not less
20 than the minimum wage "for all hours worked," evincing the intent
21 that employees be paid for each hour worked. <u>Id.</u> at 323. It also
22 observed that Labor Code sections 221 and 222 prohibited employers
23 from withhold or collect from employees any portion of their wages
24 that had been agreed upon; in the defendants' averaging
25 compensation scheme, a portion of the employee's wage per
26 "productive" hour was effectively withheld and used as compensation

7

1   for the "non-productive" hours. Id. Moreover, the averaging scheme

2   contravened Labor Code section 223, which bars employers from

3   secretly paying a lower wage than that set by statute or contract.

4   Id. Finally, the court observed that the state labor codes were

5   more generous generally that the comparable federal statutes in

6   setting forth minimum wage standards. Id. at 324.

7       Defendants attempt to distinguish Armenta on the grounds that

8   the employers in that case designed the compensation scheme so as

9   not to compensate employees for "nonproductive" hours, because the

10  employers instructed employees not to report nonproductive hours

11  and because the employees in Armenta were purportedly paid on

12  hourly rates, not piece rates. These factual differences do not

13  appear dispositive, as the Armenta court plainly held "[t]he

14  averaging method used by the federal courts for assessing a

15  violation of the federal minimum wage law does not apply" to

16  alleged violations of California minimum wage laws. 135 Cal. App.

17  4th at 323. Here, plaintiff alleges that defendants utilized a

18  compensation scheme that possessed the same central characteristics

19  which the Armenta court rejected, in that employees are not

20  necessarily compensated for every hour worked and an employee is

21  compensated for non-piece rate hours with wages accrued during

22  piece hours. This method of compensation is what the Armenta court

23  found violated Labor Code sections 221, 222, and 223. Id. at 323.

24      Defendants also contend that the California Court of Appeals'

25  decision in Fitz-Gerald v. SkyWest Airlines, 155 Cal. App. 4th 411

26  (2007), both demonstrates the narrowness of the holding in Armenta

1  and the lawfulness of the compensation scheme at issue in this
2  case. Defendants' argument is unpersuasive. In _SkyWest_, the court
3  of appeals upheld a grant of summary judgment to the defendant
4  employer on the grounds that the plaintiff employees' action for
5  violation of state minimum wage laws was preempted under the
6  Railway Labor Act, because the employer was an airline. 155 Cal.
7  App. 4th at 415-16. The _SkyWest_ court expressly distinguished
8  _Armenta_ on the grounds that the latter did not deal with
9  preemption, which was the central issue in _SkyWest_. _Id._ at 416-17.
10 Similarly, there is no indication that federal preemption is
11 relevant to the instant case and therefore _SkyWest_ has little
12 applicability to the allegations here. It certainly does not,
13 despite defendants' contention otherwise, stand for the proposition
14 that the compensation scheme alleged here is lawful under state
15 law.

16     As defendants observe, the _SkyWest_ court characterized
17 _Armenta_'s holding as "[a]n employer may not invoke a federal
18 minimum wage averaging formula to defend against a minimum wage
19 claim where the employer, in violation of its own wage agreement,
20 pays no wage for an hour worked." 155 Cal. App. 4th at 417.
21 Defendants argue that because plaintiff does not allege that
22 defendants violated its own wage agreement, its conduct cannot be
23 held unlawful. Defendants' interpretation distorts the holding of
24 _Armenta_. As discussed above, Labor Code section 223 bars an
25 employer from secretly withholding a portion of an employee's
26 agreed upon wage in order to use that wage to pay the employee for

other time worked. Labor Code sections 221 and 222 prohibit an employer from paying an employee less than minimum wage for each hour worked, whether through a wage agreement or not. The SkyWest court recognized this to be the basis for the Armenta court's holding. See SkyWest, 155 Cal. App. 4th at 417 & n. 2. In other words, neither the Armenta nor the SkyWest court held that an employer may violate Labor Code sections 221, 222, or 223 so long as the employer does not violate its own wage agreements. SkyWest, therefore, does not provide grounds for granting defendants' motion.

Finally, defendants argue that their compensation scheme is lawful because they did not preclude employees from earning piece rate compensation. Defendants rely on section 47.7 of the DLSE Manual, which discusses piece rate compensation and provides, "if, as a result of the directions of the employer, the compensation received by piece rate . . . workers is reduced because they are precluded, by such directions of the employer, from earning . . . piece rate compensation during a period of time, the employee must be paid at least the minimum wage. . . ." Defendants argue that plaintiff has not alleged that defendants precluded him from earning piece rate compensation and therefore the compensation scheme is valid according to the DLSE. This position appears to be an unduly narrow reading of plaintiff's allegations. Plaintiff alleges that there are activities that are necessary and incidental to performing the work for which an employee can receive piece rate compensation, such as preparing one's work station or attending

10

1     training. <u>See</u> Opp'n at 8-9. Because these tasks are essential to

2     the piece rate work and are uncompensated, the compensation scheme

3     would appear to violate the minimum wage laws as well as run afoul

4     of the DLSE's interpretation thereof. Accordingly, it appears that

5     plaintiff has alleged a valid theory of recovery.

6         Moreover, even if defendants' narrower interpretation of the

7     DLSE Manual's pronouncement is correct, it would not be proper to

8     grant their motion. It is simply not the case that there are no

9     possible set of facts consistent with plaintiff's allegations that

10     would permit his recovery. <u>See</u> <u>Hishon</u>, 467 U.S. at 73. If

11     defendants are correct, that a piece rate system is lawful so long

12     as an employee is paid minimum wage for times during which he is

13     precluded by his employer from earning a piece rate, it is

14     appropriate to permit the plaintiff to conduct discovery in order

15     to develop facts on this issue.

16 **B.   Basis of Liability of Defendant Zamora**

17         Defendant Zamora moves for judgment on the pleadings on the

18     grounds that, as a corporate officer, he cannot be liable for

19     violations of state wage and hour laws. Defendant's status as a

20     corporate officer may not alone be the basis of his liability.

21     Plaintiff has also pled, alternatively, that Zamora is plaintiff's

22     joint employer or the alter ego of the corporate defendant or the

23     person who caused the Labor Code violations. Plaintiff has

24     successfully pled that Zamora is a joint employer and that he

25     caused the violations at issue, but has not adequately pled that

26     Zamora is an alter ego of the corporate defendants. Defendant's

1  motion is granted to that extent.

2      Preliminarily, defendant Zamora is correct that the California

3  Supreme Court has held that a corporate officer cannot be liable

4  for the wage and hour violations of the corporation on the basis

5  of his status alone. In Reynolds v. Bement, 36 Cal. 4th 1075

6  (2005), the California Supreme Court considered whether plaintiff

7  employees could allege that individual defendants, who were all

8  officers, directors, or otherwise agents of their corporate

9  employer, were liable for violations of state labor laws.

10 Plaintiffs had alleged that these individual defendants "directly

11 or indirectly . . . employed or exercised control over wages,

12 hours, or working conditions of Class members" and "caus[ed] the

13 corporate defendants to violate the overtime regulations . . . and

14 commit other statutory violations." Reynolds, 36 Cal. 4th at 1081.

15 Plaintiffs alleged violations of the state minimum wage and

16 overtime laws, as well as other Labor Code violations. Id. at 1083.

17     The court rejected plaintiffs' assertions that the individual

18 defendants could be liable for Labor Code violations. Id. at 1087-

19 88. The court observed that the relevant Labor Code sections did

20 not define "employer," but rejected plaintiffs' argument that the

21 Industrial Welfare Commission's ("IWC") definition should be read

22 into the statutes. Id. at 1084-86. The IWC creates regulations for

23 employment throughout the state, set forth in Wage Orders. Id. at

24 1084, citing Tidewater Marine Western, Inc. v. Bradshaw, 14 Cal.

25 4th 557, 561 (1996). Wage Order 9, which applies to the automobile

26 industry, defines "employer" as one who "exercises control over the

1    wages, hours, or working conditions of any person." Id. at 1085;

2    see also IWC Wage Order No. 9-2001(2)(G). The court concluded that

3    there was no indication that the legislature intended to

4    incorporate this definition in the Labor Code sections. Id. at

5    1086.

6         Instead, the court explained, a term that is undefined in a

7    statute should be interpreted in accordance with common law. Id.

8    at 1086-87. Under California common law, individual agents,

9    officers, or employees of a corporate employer have not been

10   encompassed in the term "employer" in the context of Labor Code

11   violations. Id. at 1087-88. The court relied in part on Oppenheimer

12   v. Robinson, 150 Cal. App. 2d 420, 424 (1957), where a railroad

13   superintendent had been held not to be the plaintiff's employer,

14   in an action to recover unpaid wages, because he had not been a

15   party to the employment contract or otherwise had a duty to pay the

16   plaintiff's wages. See also Shoemaker v. Myers, 52 Cal. 3d 1, 24

17   (1990) ("corporate agents and employees acting for and on behalf

18   of a corporation cannot be held liable for inducing a breach of a

19   corporation's contract"). The court recognized that a corporate

20   agent may be liable to an employee on an alter ego theory or where

21   a statute expressly provides for it. Reynolds, 36 Cal. 4th at 1089

22   & n. 10. Accordingly, to the extent that plaintiff alleges that

23   Zamora is liable for Labor Code violations simply by virtue of

24   being the owner of Zamora Automotive Group or otherwise controlling

25   it, this theory must fail.

26        Plaintiff has adequately alleged, however, that Zamora

1  "caused" the Labor Code violations, which may cause him to be

2  subject to civil penalties. Labor Code § 558 provides, "Any

3  employer or other person acting on behalf of an employer who

4  violates, or causes to be violated, . . . any provision regulating

5  hours and days of work in any order of the Industrial Welfare

6  Commission shall be subject to a civil penalty . . . ." As the

7  Reynolds court acknowledged, the text of this section expands

8  liability to include agents of the employer. See Reynolds, 36 Cal.

9  4th at 1089. Here, plaintiff has alleged that Zamora, in his

10 capacity as owner of Zamora Automotive Group, "caused" the wage and

11 hour violations alleged in the complaint, including regulations set

12 forth in IWC Wage Orders. SAC ¶¶ 11, 51, 59, 97, 98. Plaintiff's

13 claims based on violations of IWC regulations are therefore

14 adequately pled against defendant Zamora.[4]

15      Plaintiff has also pled adequately that Zamora is the joint

16 employer of plaintiff. Under California law, whether entities are

17 joint employers of an employee depends on a factual inquiry into

18 the "totality of the working relationship of the parties," rather

19 than application of a particular test such as the "interference

20 test" or "economic realities test." Vernon v. State, 116 Cal. App.

21 4th 114, 125 n. 7 (2004). Instead, the court considers the nature

22 of the work relationship, "with emphasis upon the extent to which

23 the defendant controls the plaintiff's performance of employment

24 _____

25      [4]The California Private Attorney General Act, Cal. Labor Code
   § 2699, permits a civil action to be brought for any violation of
26 a Labor Code provision that provides for a civil penalty.

duties." Id. at 124, 126. Courts have found myriad facts to be relevant, including whether the defendant pays the employee's salary and taxes, owns the equipment necessary for the employee to perform his job, has authority to hire, train, fire, or discipline the employee, or has discretion to set the employee's salary. Id. at 125 (collecting cases). Here, plaintiff has alleged some facts that Zamora was plaintiff's joint employer. He alleges that Zamora owns the dealership where plaintiff works and that he controls compensation and other labor policies, including monitoring the implementation of those policies. SAC ¶¶ 11, 14-22. These allegations are sufficient to state a claim against Zamora on the basis of his joint employment of plaintiff.

Finally, plaintiff has not adequately pled that Zamora is the alter ego of defendant Zamora Automotive Group. Under an alter ego theory, the stockholders of a corporation may be individually liable where it would be equitable to do so. Assoc. Vendors, Inc. v. Oakland Meat Co., Inc., 210 Cal. App. 2d 825, 837 (1962). Generally, alter ego liability is considered equitable where there is a unity of interests and ownership between the corporation and the individual and if the corporation alone were held liable, there would be an inequitable result. Id. Factors that courts have found militated towards finding alter ego liability include commingling of assets, treatment of the assets of the corporation as the individual's own, failure to maintain corporate records, employment of the same employees and attorneys, undercapitalization, and use of the corporation as a shell for the individual. Id. at 838-40

15

1 (collecting cases).

2     Here, plaintiff has pled facts adequate to allege that there
3 is a unity of interests between the corporate defendants and
4 Zamora. He alleges that Zamora owns and controls fifty-one percent
5 of the shares of Zamora Automotive Group and many of the individual
6 dealerships and that he is the President, Vice President, and
7 Secretary and/or Chief Financial Officer at all of them. SAC ¶¶ 13-
8 22. He also alleges that Zamora dictates the day-to-day business
9 at these dealerships to the extent that he controls the
10 implementation of wage polices. Id. ¶¶ 11, 14-22. These allegations
11 suffice to plead a unity of interests between Zamora and the
12 corporate defendants. See, e.g., Assoc. Vendors, 210 Cal. App. 2d
13 at 837; Talbot v. Fresno-Pacific Corp., 181 Cal. App. 2d 425
14 (1960); Goldberg v. Engelberg, 34 Cal. App. 2d 10 (1939).

15     Nevertheless, plaintiff not pled facts that suggest that
16 failure to impose alter ego liability would lead to an inequitable
17 result. Plaintiff alleges that Zamora is the owner of Zamora
18 Automotive Group, which is comprised of individual dealerships,
19 which Zamora also controls and holds stock. SAC ¶¶ 11-22. He does
20 not allege, however, that any of the individual dealerships or
21 Zamora Automotive Group are undercapitalized, lack corporate
22 assets, are shells created to avoid personal liability or any other
23 facts that suggest that it would be inequitable to hold only the
24 corporate defendants liable for their acts. This renders deficient
25 plaintiff's allegations against Zamora on an alter-ego theory. See
26 Assoc. Vendors, *supra.*

1

**IV. CONCLUSION**

2       For the reasons stated herein, defendant's motion to dismiss

3  is GRANTED IN PART and DENIED IN PART. Plaintiff is granted fifteen

4  days from the date of this order to file an amended complaint.

5       IT IS SO ORDERED.

6       DATED:  February 20, 2009.

7

8

9                              LAWRENCE K. KARLTON
                               SENIOR JUDGE
10                             UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

17