1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT

9
FOR THE EASTERN DISTRICT OF CALIFORNIA

10
JOSE ONTIVEROS,

11
                                        NO. CIV. S-08-567 LKK/DAD
            Plaintiff,

12
      v.

13
                                        O R D E R
ROBERT ZAMORA and ZAMORA

14
AUTOMOTIVE GROUP (form
unknown),

15
            Defendants.

16
_____/

17
      Plaintiff Jose Ontiveros has brought a putative class action

18
against his former employer Stockton Auto Cars, Inc. d/b/a Stockton

19
Honda ("Defendant"), eight other auto dealerships, Zamora

20
Automotive Group, and Robert Zamora, alleging the following causes

21
of action: (i) failure to pay overtime wages; (ii) failure to pay

22
the minimum wage; (iii) failure to provide rest periods;

23
(iv) failure to pay timely wages due at termination; (v) failure

24
to provide accurate, itemized wage statements; (vi) failure to pay

25
reporting time wages; (vii) unlawful kickbacks of wages;

26
(viii) unlawful business practices under California Bus. & Prof.

1

1   Code § 17200 due to violations of state and federal law; and
2   (ix) civil penalties under California's Private Attorneys General
3   Act of 2004, Labor Code § 2698, *et seq.* ("PAGA").

4        Defendant's motion to compel individual arbitration, strike
5   class allegations, and stay or dismiss the proceedings herein came
6   on for hearing on February 11, 2013. Having considered the matter,
7   for the reasons set forth below, the court will deny the motion.

8   **I. BACKGROUND**

9        Plaintiff was formerly employed by defendant as an auto
10  mechanic. He initiated this lawsuit on March 12, 2008. (ECF No. 1.)
11  The gravamen of plaintiff's complaint is that auto mechanics
12  employed by defendant and other dealerships in the Zamora
13  Automotive Group are paid on what is essentially a piece rate
14  system, one that leaves them unpaid for time when they are not
15  working on a repair job, but are still required to be at work.

16       Plaintiff filed the operative Second Amended Complaint on
17  November 18, 2008. (ECF No. 18). In response to defendants' motion
18  for judgment on the pleadings (ECF No. 26), the court held that
19  plaintiff had failed to sufficiently allege that defendant Robert
20  Zamora could be held liable (i) under an alter ego theory, and
21  (ii) solely by virtue of owning and controlling Zamora Automotive
22  Group, but had sufficiently alleged his liability (iii) for civil
23  penalties due to Labor Code violations that he caused, and (iv) as
24  plaintiff's joint employer. (Order, February 20, 2009, ECF No. 29.)

25       This matter was subsequently stayed from March 27, 2009 to
26  October 31, 2009 in order to give the parties time to pursue

1  mediation. (ECF Nos. 34, 37.) It was again stayed, and then

2  administratively closed, from July 13, 2010 to July 25, 2012,

3  pending the outcome of a related state court proceeding.[1] (ECF

4  Nos. 51, 58, 64.) In other words, this action has been stayed for

5  approximately 31 of the 59 months since it was filed.

6  　　On September 7, 2012, after the stay was lifted, the court

7  entered a pretrial scheduling order that, *inter alia,* ordered

8  defendants to produce payroll and personnel documents related to

9  class certification within 60 days, and ordered plaintiff to file

10 a motion for class certification within 30 days of production of

11 those documents. (ECF No. 70.)

12 　　On December 5, 2012, plaintiff filed his motion for class

13 certification. (ECF No. 73.) One day earlier, defendant filed the

14 instant motion to compel individual arbitration, strike class

15 allegations, and stay or dismiss the proceedings herein. (ECF

16 No. 72.)

17 　　As defendants' motion seeks to stay this action or strike the

18 class allegations in their entirety, it must be considered before

19 turning to plaintiff's motion for class certification.

20 //

21

22 　　　[1] According to the parties' stipulation seeking the second
   stay (ECF No. 45), the related case addressed whether defendants
23 were entitled to insurance coverage for the costs of defending the
   instant action and any potential indemnity.  <u>See</u> <u>Mid-Century</u>
24 <u>Insurance Co. v. Zamora</u>, Superior Court of California for the
   County of San Joaquin, case no. 30-2009-00222363-CU-IC-STK.
25 According to the parties, this case is now on appeal at the
   California Court of Appeal for the Third Appellate District, case
26 no. C069644. (ECF Nos. 59, 60.)

3

1  **II. DEFENDANTS' MOTION**

2        According to defendants, plaintiff signed a document entitled

3  "Applicant's Statement & Agreement" (hereinafter, "Agreement") on

4  May 11, 2007, which included the following arbitration provision:

5            I also acknowledge that the Company utilizes a system of
           alternative dispute resolution which involves binding
6            arbitration to resolve all disputes which may arise out
           of the employment context. Because of the mutual
7            benefits (such as reduced expense and increased
           efficiency) which private binding arbitration can
8            provide both the Company and myself, I and the Company
           both agree that any claim, dispute, and/or controversy
9            that either party may have against one another
           (including, but not limited to, any claims of
10           discrimination and harassment, whether they be based on
           the California Fair Employment and Housing Act, Title
11           VII of the Civil Rights Act of 1964, as amended, as well
           as other applicable state or federal laws or
12           regulations) which would otherwise require or allow
           resort to any court or other governmental dispute
13           resolution forum between myself and the Company (or its
           owners, directors, officers, managers, employees,
14           agents, and parties affiliated with its employee benefit
           and health plans), arising from, related to, or having
15           any relationship or connection whatsoever with my
           seeking employment with, employment by, or other
16           association with the Company, whether based on tort,
           contract, statutory, or equitable law, or otherwise,
17           (with the sole exception of claims arising under the
           National Labor Relations Act, which are brought before
18           the National Labor Relations Board, claims for medical
           and disability benefits under the California Workers'
19           Compensation Act, and Employment Development Department
           claims) shall be submitted to and determined exclusively
20           by binding arbitration. I acknowledge that the Company's
           business (repairing automobiles and selling automobiles
21           and parts coming from outside the State) and the nature
           of my employment in that business affect interstate
22           commerce. I agree that the arbitration and this
           Agreement shall be controlled by the Federal Arbitration
23           Act, in conformity with the procedures of the California
           Arbitration Act (Cal. Code Civ. Proc. § 1280, et seq,
24           including section 1283.05 and all of the Act's other
           mandatory and permissive rights to discovery). However,
25           in addition to requirements imposed by law, any
           arbitrator herein shall be a retired California Superior
26           Court Judge and shall be subject to disqualification on

4

Case 2:08-cv-00567-LKK-DAD   Document 104   Filed 02/14/13   Page 5 of 25


the same grounds as would apply to a judge of such court. To the extent applicable in civil actions in California courts, the following shall apply and be observed: all rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure Section 631.8. Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including but not limited to, notions of "just cause") other than such controlling law . . . . Awards shall include the arbitrator's written reasoned opinion. Disputes shall be resolved based solely on the law governing the claims. Both the Company and I agree that any arbitration proceeding must move forward under the Federal Arbitration Act (9 U.S.C. §§ 3-4) even though the claims may involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration: thus, the court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding despite the provisions of California Code of Civil Procedure § 1281.2(c). I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY.[2] (ECF No. 72-2.)

On the basis of this provision, defendant moves to compel individual arbitration with plaintiff, to strike the class allegations in the operative complaint, and to stay or dismiss the action.

////

---

[2] While the Agreement does not include an explicit class arbitration waiver, at least two California Courts of Appeal have recently determined that arbitration agreements containing similar language include *implicit* class action waivers because they are phrased purely in bilateral terms ("the mutual benefits . . . which private binding arbitration can provide both the Company and myself", "I and the Company both agree that any claim, dispute, and/or controversy that either party may have against one another," etc.). See Kinecta Alt. Fin. Solutions, Inc. v. Superior Court, 205 Cal.App.4th 506, 518-19 (2012); Reyes v. Liberman Broad., Inc., 208 Cal.App.4th 1537 (2012), review granted by Reyes v. Liberman Broad., Inc., 288 P.3d 1287 (Cal. 2012).

**III. STANDARD RE: MOTION TO COMPEL INDIVIDUAL ARBITRATION**

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

9 U.S.C. § 2 "create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

While the FAA reflects a "liberal federal policy favoring arbitration," AT&T Mobility v. Concepcion, 562 U.S. __, 131 S.Ct. 1740, 1745 (2011) (quoting Moses H. Cone, 460 U.S. at 24), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).

"[T]he federal law of arbitrability under the Federal Arbitration Act governs the allocation of authority between courts and arbitrators. Because the FAA mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed, the FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

6

1  encompasses the dispute at issue." <u>Cox v. Ocean View Hotel Corp.</u>,

2  533 F.3d 1114, 1119 (9th Cir. 2008) (internal citations and

3  quotations omitted).

4      In construing arbitration agreements, courts must "apply

5  ordinary state-law principles that govern the formation of

6  contracts." <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938,

7  944 (1995).

8  **IV. ANALYSIS**

9      **A. What law should the court apply in deciding this motion?**

10     This matter presents an interesting choice-of-law question.

11     The court has jurisdiction under the Class Action Fairness Act

12  of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as it is a putative

13  class action in which "any member of a class of plaintiffs is a

14  citizen of a State different from any defendant."

15     Ordinarily, when the court sits in diversity, it must apply

16  the substantive law of the forum in which it is located. <u>Erie R.R.</u>

17  <u>Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938). As the U.S. Supreme Court

18  has noted:

19          The highest state court is the final authority on state
            law, but it is still the duty of the federal courts,
20          where the state law supplies the rule of decision, to
            ascertain and apply that law even though it has not been
21          expounded by the highest court of the State. An
            intermediate state court in declaring and applying the
22          state law is acting as an organ of the State and its
            determination, in the absence of more convincing
23          evidence of what the state law is, should be followed by
            a federal court in deciding a state question.
24
    <u>Fidelity Union Trust Co. v. Field</u>, 311 U.S. 169, 177-8 (1940).
25
        The choice-of-law provision in the Agreement provides, "I
26

                                    7

1  agree that the arbitration and this Agreement shall be controlled

2  by the Federal Arbitration Act, in conformity with the procedures

3  of the California Arbitration Act (Cal. Code Civ. Proc. § 1280, et

4  seq, including section 1283.05[3] and all of the Act's other

5  mandatory and permissive rights to discovery)."

6       The parties have failed to adequately brief the question of

7  how, in practice, the court's interpretation of the Agreement

8  should be "controlled by the Federal Arbitration Act, in conformity

9  with the procedures of the California Arbitration Act." Plaintiff's

10 opposition argues that the court should stay individual arbitration

11 of his PAGA claims under Cal. Code Civ. Proc. § 1281.2(c).

12 (Opposition 12, ECF No. 98.) Defendant responds, correctly, that

13 the Agreement explicitly provides that there shall be no stay under

14 this section.[4] (Reply 7, ECF No. 101.) Neither party otherwise

15 argues that procedures under the California Arbitration Act ("CAA")

16 should not apply.

17      It is well-settled that the FAA permits the enforcement of

18 agreements to arbitrate under different rules than those set forth

19 in the Act. This is the case "even if the result is that

20 arbitration is stayed where the Act would otherwise permit it to

21 go forward." Volt Info. Sciences, Inc. v. Bd. of Trustees of the

22 

23      [3] Cal. Code. Civ. Proc. § 1283.05 addresses deposition
24 procedures in arbitration.

25      [4] This provision reads, "[T]he court may not refuse to enforce
   this arbitration agreement and may not stay the arbitration
26 proceeding despite the provisions of California Code of Civil
   Procedure § 1281.2(c)."

1  <u>Leland Stanford Junior Univ.</u>, 489 U.S. 468, 478-9 (1989).

2      In <u>Nelsen v. Legacy Partners Residential, Inc.</u>, 207

3  Cal.App.4th 1115 (2012), the California Court of Appeals considered

4  an arbitration agreement with identical language ("shall be

5  controlled by the Federal Arbitration Act, in conformity with the

6  procedures of the California Arbitration Act"). It concluded in a

7  footnote, with no further discussion, that "[t]here is no dispute

8  the FAA governs the arbitration agreement." <u>Id.</u> at 1120 n.2.

9      This conclusion is puzzling because it renders the phrase "in

10  conformity with the procedures of the California Arbitration Act"

11  mere surplusage. It is a settled canon of contractual

12  interpretation that "[i]n the interpretation of a promise or

13  agreement or a term thereof . . . an intepretation which gives a

14  reasonable, lawful, and effective meaning to all the terms is

15  preferred to an interpretation which leaves a part unreasonable,

16  unlawful, or of no effect." Restatement (Second) of Contracts § 203

17  (1981). Similarly, "[w]here the whole can be read to give

18  significance to each part, that reading is preferred; if such a

19  reading would be unreasonable, a choice must be made." <u>Id.</u>, § 202

20  cmt. d. Likewise, Cal. Civ. Code § 3541 sets forth the maxim, "An

21  interpretation which gives effect is preferred to one which makes

22  void."

23      Under California law, "The language of a contract is to govern

24  its interpretation, if the language is clear and explicit, and does

25  not involve an absurdity." Cal. Civ. Code § 1638. "[T]he meaning

26  [of contractual language] is to be obtained from the entire

1   contract, and not from any one or more isolated portions thereof."

2   Lemm v. Stillwater Land & Cattle Co., 217 Cal. 474, 480 (1933).

3        If, following the latter directive, one examines the whole of

4   the arbitration clause in the Agreement, one finds at least one

5   other reference to procedural provisions under the CAA: "Both the

6   Company and I agree that any arbitration proceeding must move

7   forward under the Federal Arbitration Act (9 U.S.C. §§ 3-4) even

8   though the claims may involve or relate to parties who are not

9   parties to the arbitration agreement and/or claims that are not

10  subject to arbitration: thus, the court may not refuse to enforce

11  this arbitration agreement and may not stay the arbitration

12  proceeding despite the provisions of California Code of Civil

13  Procedure § 1281.2(c)." (ECF No. 72-2.) Section 1281.2(c) sets

14  forth circumstances under which a court need not order the parties

15  to arbitration, such as on-going third-party litigation, arising

16  out of the same or related transactions, that may give rise to

17  conflicting rulings. The qualification, in the quoted contractual

18  provision, that the FAA will trump the CAA in this circumstance

19  indicates that the parties do intend the CAA's procedural rules to

20  govern.

21       Accordingly, the court will proceed to interpret this

22  agreement under the Federal Arbitration Act, but if at any point

23  it appears that the FAA conflicts with the procedures outlined in

24  the CAA, the court will apply the latter.

25  ////

26  ////

1        **B. Has defendant waived its right to compel arbitration?**

2             **i. Standard re: Waiver**

3        Under the FAA, 9 U.S.C. § 2, a party "may challenge the

4   validity or applicability of [an] arbitration provision by raising

5   the same defenses available to a party seeking to avoid the

6   enforcement of any contract. These contract-based challenges are

7   governed by the applicable state law." <u>Cox</u>, 553 F.3d at 1121

8   (internal citations and quotations omitted).  That is to say, under

9   federal arbitration law, the question of waiver is resolved under

10  state law.  Accordingly, the court will assess whether defendant

11  has waived its right to compel arbitration under California law.

12       Under Cal. Code Civ. Proc. § 1281.2(a), a court may deny a

13  petition to compel if it determines that "[t]he right to compel

14  arbitration has been waived by the petitioner . . . ." The

15  California Supreme Court has interpreted this provision to mean

16  that "[w]hen no time limit for demanding arbitration is specified

17  [in the arbitration agreement], a party must still demand

18  arbitration within a reasonable time." <u>Wagner Const. Co. v. Pacific</u>

19  <u>Mechanical Corp.</u>, 41 Cal.4th 19, 29 (2007) (internal citations

20  omitted). "[I]n the absence of legal excuse, a party's failure to

21  timely demand arbitration results in a contractual forfeiture of

22  the right to compel arbitration." <u>Platt Pac., Inc. v. Adelson</u>, 6

23  Cal.4th 307, 318-19 (1993).

24       "A party who resists arbitration on the ground of waiver bears

25  a heavy burden [of proof], and any doubts regarding a waiver

26  allegation should be resolved in favor of arbitration." <u>St. Agnes</u>

1  Med. Ctr. v. PacifiCare of Cal., 31 Cal.4th 1187, 1195 (2003)

2  (internal citations omitted).

3      In St. Agnes, the California Supreme Court set forth the

4  following standard for determining whether a party has waived its

5  right to arbitration:

6          (1) whether the party's actions are inconsistent with
           the right to arbitrate; (2) whether the litigation
7          machinery has been substantially invoked and the parties
           were well into preparation of a lawsuit before the party
8          notified the opposing party of an intent to arbitrate;
           (3) whether a party either requested arbitration
9          enforcement close to the trial date or delayed for a
           long period before seeking a stay; (4) whether a
10         defendant seeking arbitration filed a counterclaim
           without asking for a stay of the proceedings;
11         (5) whether important intervening steps [e.g., taking
           advantage of judicial discovery procedures not available
12         in arbitration] had taken place; and (6) whether the
           delay affected, misled, or prejudiced the opposing
13         party.

14  Id. at 1196 (internal citations and quotations omitted).

15              **ii. Analysis**

16              **(a) Actions inconsistent with the right to arbitrate;**

17              **delay in seeking arbitration enforcement**

18      The crux of plaintiff's waiver argument is that defendant

19  simply waited too long to invoke its right to arbitrate, instead

20  proceeding as it it were intent on fully litigating the matter.

21  Plaintiff claims that these actions were inconsistent with the

22  right to arbitrate, and also represent an undue delay. (Opposition

23  2-5, ECF No. 98.)

24      Defendant responds that, at the time this action was filed,

25  it had determined that the California Supreme Court's decision in

26  Gentry v. Superior Court, 42 Cal.4th 443 (2007) precluded it from

1  enforcing the Agreement and compelling plaintiff to arbitrate the
2  dispute. (Mot. to Compel Arb. 13-14, ECF No. 72-1; Reply 3-4, ECF
3  No. 101.) Three years later, when the U.S. Supreme Court issued its
4  opinion in <u>AT&T Mobility v. Concepcion</u>, 562 U.S. __, 131 S.Ct.
5  1740, 179 L.Ed.2d 742 (2011), defendant concluded that the
6  arbitration agreement was now enforceable.

7      <u>Gentry</u> holds that, in certain cases, a court may not enforce
8  express waivers of class or representative actions in arbitration
9  agreements if it determines that individual arbitration may
10 preclude employees from vindicating unwaivable statutory rights
11 (such as the right to overtime pay) that express public policy in
12 favor of enforcing wage and hour laws. <u>Gentry</u>, 42 Cal.4th at 563-4.

13     In reaching this holding, the California Supreme Court relied
14 heavily on its reasoning in <u>Discover Bank v. Superior Court</u>, 36
15 Cal.4th 148 (2005), which held that certain class action waivers
16 in consumer contracts of adhesion were unenforceable, as contrary
17 to public policy against exculpation of fraud or willful injury.
18 <u>Id.</u> at 453-4.

19     <u>Discover Bank</u>, in turn, was overruled by the U.S. Supreme
20 Court in <u>Concepcion</u>, which held that the FAA preempts state law,
21 and therefore, "[s]tates cannot require a procedure that is
22 inconsistent with the FAA, even if it is desirable for unrelated
23 reasons." 131 S.Ct at 1752. Thus, "class arbitration, to the extent
24 it is manufactured by <u>Discover Bank</u> rather than consensual, is
25 inconsistent with the FAA." <u>Id.</u> at 1750-1751.

26     There is a marked split among the California Courts of Appeal

13

Case 2:08-cv-00567-LKK-DAD   Document 104   Filed 02/14/13   Page 14 of 25

as to the continuing viability of <u>Gentry</u> in light of <u>Concepcion</u>.
Some courts have held that <u>Gentry</u> is no longer good law. <u>See</u>, <u>e.g.</u>,
<u>Iskanian v. CLS Transp. Los Angeles, LLC</u>, 206 Cal.App.4th 949
(2012) ("[W]e find that the <u>Concepcion</u> decision conclusively
invalidates the <u>Gentry</u> test"). Other courts have determined that
<u>Concepcion</u> likely overrules <u>Gentry</u>, but <u>Gentry</u> remains binding
precedent until a higher court says otherwise. <u>See</u>, <u>e.g.</u>, <u>Truly</u>
<u>Nolen of America v. Superior Court</u>, 208 Cal.App.4th 487, 507 (2012)
("Although we agree . . . that <u>Concepcion</u> implicitly disapproved
the reasoning of the <u>Gentry</u> court, the United States Supreme Court
did not directly address the precise issue presented in <u>Gentry</u>.
Under the circumstances, we decline to disregard the California
Supreme Court's decision without specific guidance from our high
court"). Still other courts maintain that <u>Gentry</u> remains good law
despite <u>Concepcion</u>. <u>See</u>, <u>e.g.</u>, <u>Franco v. Arakelian Enter., Inc.</u>,
211 Cal.App.4th 314, 326 (2012) ("We conclude that <u>Gentry</u> remains
good law because, as required by <u>Concepcion</u>, it does not establish
a categorical rule against class action waivers but, instead, sets
forth several factors to be applied on a case-by-case basis to
determine whether a class action waiver precludes employees from
vindicating their statutory rights"). On September 19, 2012, the
California Supreme Court granted review of <u>Iskanian</u>, <u>supra</u>,
presumably to resolve this split among the California Courts of
Appeal.

    At this juncture, the court does not take a position on
<u>Gentry</u>'s continued viability, merely noting the (obvious) point

14

1  that it is an open question of law.

2      Defendant's argument - that it delayed in moving to compel

3  arbitration until it concluded that <u>Gentry</u> was no longer valid

4  under <u>Concepcion</u> - was successfully raised in each of the following

5  cases:

6     •  <u>Quevedo v. Macy's, Inc.</u>, 798 F.Supp.2d 1122 (C.D.Cal.

7         2011) (holding that defendant Macy's reasonably

8         concluded that it could not enforce an arbitration

9         agreement under <u>Gentry</u> and thereby did not waive its

10        right to compel arbitration), a case on which defendant

11        herein relies heavily. The <u>Concepcion</u> decision was

12        announced on April 27, 2011. Less than one month later,

13        on May 25, 2011, Macy's filed a motion to compel

14        arbitration.

15     •  <u>Reyes v. Liberman Broad., Inc.</u>, 208 Cal.App.4th 1537

16        (2012), review granted by <u>Reyes v. Liberman Broad.</u>, 288

17        P.3d 1287 (Cal. 2012) (holding that defendant reasonably

18        concluded that it could not enforce an arbitration

19        agreement under <u>Gentry</u> and therefore did not waive its

20        right to compel arbitration). Defendant Liberman

21        Broadcasting, Inc. informed plaintiff Reyes "that it

22        intended to move to compel arbitration just one month

23        after the Supreme Court issued <u>Concepcion</u> . . . and

24        filed its motion to compel a month later." <u>Id.</u> at 629.

25     •  <u>Iskanian</u>, 206 Cal.App.4th at 387 ("There is no basis to

26        find that [defendant] unreasonably delayed in renewing

1    its motion to compel arbitration. The issue of whether
2    a party has sought arbitration within a reasonable time
3    is a question of fact. [Defendant] sought to compel
4    arbitration less than three weeks after the Supreme
5    Court rendered its decision in <u>Concepcion</u>").

6    In light of these opinions, it is helpful to construct a
7    timeline of the relevant events in the instant matter:

8    • March 12, 2008: plaintiff files complaint

9    • January 5, 2009: defendant files Motion for Judgment on
10   the Pleadings

11   • February 20, 2009: Motion for Judgment on the Pleadings
12   granted in part and denied in part

13   • March 27, 2009: matter stayed

14   • October 31, 2009: matter reopened

15   • July 13, 2010: matter administratively closed

16   • April 27, 2011: <u>Concepcion</u> decision announced

17   • July 26, 2012: matter reopened

18   • September 4, 2012: status conference held, at which the
19   court ordered defendant to produce certain documents
20   within sixty days, and plaintiff to file a motion for
21   class certification within thirty days thereafter.
22   Defendant makes no mention of arbitration.

23   • November 27, 2012: on a telephone call, defendant's
24   counsel asks plaintiff's counsel whether plaintiff would
25   agree to individual arbitration. (Gulledge Dec. ¶ 2, ECF
26   No. 72-3.)

16

1          •      November 29, 2012: defendant's counsel sends plaintiff's
2                 counsel a letter requesting submission of claims to
3                 arbitration, and asking for a response in one day.
4                 (Gulledge Dec. ¶ 3.)
5          •      December 4, 2012: defendant files the instant motion to
6                 compel individual arbitration.
7          •      December 5, 2012: plaintiff files a motion for class
8                 certification.

9      The contrast between the diligence of the defendants in
10 <u>Quevedo</u>, <u>Reyes</u>, and <u>Iskanian</u>, and that of the defendant herein is
11 notable. "If a party wishes to compel arbitration, he must take
12 active and decided steps to secure that right . . . ." <u>Davis v.</u>
13 <u>Blue Cross of Northern Cal.</u>, 25 Cal.3d 418, 425-426 (1979).
14 Defendant did not promptly move to compel arbitration after the
15 stay herein was lifted. Instead, defendant waited until four months
16 after the stay was lifted (and, not incidentally, two-and-a-half
17 months after a status conference with the court) before it
18 communicated to opposing counsel its intent to initiate
19 arbitration.

20      Defendant attempts to justify this delay by claiming that it
21 "promptly brought this motion, once the matter was active again and
22 at least one decision of the Eastern District confirmed that
23 individual arbitration can be compelled in the context of class or
24 representative claims." (Mot. to Compel 14, ECF No. 72-1.) This
25 decision is <u>Luchini v. Carmax, Inc.</u>, No. 12-0417, 2012 WL 3862150
26 (E.D.Cal. Sep. 5, 2012) (O'Neill, J.) (denying plaintiff an

1    interlocutory appeal of a prior order compelling arbitration of
2    plaintiff's wage and hour claims, and dismissing without prejudice
3    plaintiff's class, collective, and representative claims).

4         Defendant's argument is unavailing. While this court must (and
5    does) respect the decisions of fellow judges in this district,
6    their decisions are not binding upon the court. Further, even
7    cursory inspection of the cited opinion cites shows that Judge
8    O'Neill's order compelling arbitration (*i.e.*, the order which
9    plaintiff therein sought permission to appeal) was issued on July
10   23, 2012, *i.e.*, three days before the stay was lifted in this
11   matter. See Luchini v. Carmax, Inc., No. 12-0417, 2012 WL 2995483
12   (E.D.Cal. Jul. 23, 2012). If defendant was waiting for a signal
13   from this judicial district as to the potential non-viability of
14   class arbitration waivers in light of Concepcion, that signal was
15   available on the day the stay was lifted.

16        Defendant's position is also weakened by the Ninth Circuit's
17   recent decision in Gutierrez v. Wells Fargo Bank, NA, __ F.3d __,
18   2012 WL 6684748 (9th Cir. 2012), a consumer case in which the court
19   refused to accept Wells Fargo's argument that its arbitration
20   demand would have been futile before Concepcion. The Ninth Circuit
21   noted, "The futility of an arbitration demand . . . is not clear
22   cut here. In contemporaneous consumer litigation, litigants did
23   succeed in compelling arbitration despite the existence of the
24   Discover Bank rule. Especially because the CAA did not prohibit
25   class arbitration, a motion to compel arbitration was not
26   inevitably futile under the prescribed case-by-case analysis." Id.

18

1    at *6 (internal citations omitted). Similarly, in the interval

2    between the issuance of the Gentry and Concepcion decisions, courts

3    have ordered the parties to arbitration in putative wage-and-hour

4    class actions. See, e.g., Borrero v. Travelers Indem. Co., No.

5    S-10-322, 2010 WL 4054114 (E.D.Cal. Oct. 15, 2010) (applying Gentry

6    factors and ultimately finding enforceable the class action waiver

7    in an arbitration agreement). If nothing else, the Gutierrez

8    decision casts doubt on the credibility of defendant's claim that

9    its arbitration rights were unenforceable pre-Concepcion. This is

10   particularly true given that one of the factors to be weighed by

11   courts in determining the enforceability of class action waivers

12   under Gentry is "the risk of retaliation that current employees

13   face." 42 Cal.4th at 463 (noting that "fear of retaliation for

14   individual suits against an employer is a justification for class

15   certification in the area of employment litigation."). Surely

16   defendant does not mean to suggest that it was foreclosed from

17   arbitrating employment disputes under Gentry because it was likely

18   to retaliate against current employees for exercising their rights?

19        In sum, the court finds that defendant did not act diligently

20   to exercise its right to arbitrate this dispute. Defendant's

21   actions were "inconsistent with the right to arbitrate" and

22   defendant "delayed for a long period before seeking a stay." St.

23   Agnes 31 Cal.4th at 1196.

24            **(b) Actions inconsistent with the right to arbitrate;**

25            **substantial invocation of the litigation machinery**

26        In support of its waiver argument, plaintiff further asserts

19

1   that neither of the Answers that defendant filed herein (ECF Nos.

2   12, 22) allege its right to arbitrate or its intention to do so.

3   Moreover, defendant moved for judgment on the pleadings (ECF No.

4   26-1) in order to narrow the claims asserted against it.

5   (Opposition, ECF No. 98.)

6        Defendant counters that since it "reasonably believed that it

7   could not successfully move to compel arbitration, its relatively

8   limited use of the judicial process should not be held against it."

9   (Mot. to Compel Arb. 13, ECF No. 72-1.)

10       It is the court's view that defendant's conduct was

11  inconsistent with the right to arbitrate, and that it substantially

12  invoked the litigation machinery before moving for arbitration. As

13  discussed above, the Ninth Circuit's decision in <u>Gutierrez</u>, __ F.3d

14  __, 2012 WL 6684748, undermines defendant's claim that it was

15  precluded by <u>Gentry</u> from exercising its right to arbitrate this

16  dispute. By foregoing its right to arbitrate before the stay and

17  instead seeking to narrow the issues at issue through motion

18  practice, defendant evinced an intent to litigate, rather than

19  arbitrate this matter. "Partial or piecemeal litigation of issues

20  in dispute, through pretrial procedures, may in many instances

21  justify a finding of waiver." <u>McConnell v. Merill Lynch, Pierce,</u>

22  <u>Fenner & Smith, Inc.</u>, 105 Cal.App.3d 946, 951 (1980). It appears

23  that defendant chose to invoke arbitration only in the face of a

24  class certification motion. "This is like testing the water before

25  taking the swim. If it's not to your liking you go elsewhere. A

26  waiver of the right to arbitrate may properly be implied from any

1   conduct which is inconsistent with the exercise of that right." <u>Id.</u>

2       In short, plaintiff has shown that defendant took actions

3   "inconsistent with the right to arbitrate" and that "the litigation

4   machinery [was] substantially invoked and the parties were well

5   into preparation of a lawsuit before the party notified the

6   opposing party of an intent to arbitrate." <u>St. Agnes</u>, 31 Cal.4th

7   at 1196.

8               **(c) Prejudice to the opposing party; bad faith**

9       According to the California Supreme Court, "whether or not

10  litigation results in prejudice . . . is critical in waiver

11  determinations." <u>St. Agnes</u>, 31 Cal.4th at 1203. "Prejudice

12  typically is found only where the petitioning party's conduct has

13  substantially undermined th[e] important public policy [in favor

14  of arbitration as a speedy and relatively inexpensive means of

15  dispute resolution] or substantially impaired the other side's

16  ability to take advantage of the benefits and efficiencies of

17  arbitration." <u>Id.</u>

18      The <u>St. Agnes</u> opinion offers several examples of prejudicial

19  conduct, including "judicial litigation of the merits of arbitrable

20  issues." <u>Id.</u> at 1203. "[W]aiver does not occur by mere

21  participation in litigation; there must be judicial litigation of

22  the merits of arbitrable issues, although waiver could occur prior

23  to a judgment on the merits if prejudice could be demonstrated."

24  <u>Id.</u> (internal citations and quotations omitted). As discussed

25  above, defendant filed a motion for judgment on the pleadings that

26  sought to narrow the claims at issue before it moved for

arbitration. This issue could have been arbitrated, but defendant sought to litigate it, thereby undermining the public policy in favor of arbitration. As the California Supreme Court has noted, "The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration." Christensen, 33 Cal.3d at 784 (quoting De Sapio v. Kohlmeyer, 321 N.Y.2d 402 (N.Y. 1974)).

Moreover, viewing the totality of the circumstances, there is little doubt that defendant's conduct has prejudiced plaintiff in this litigation. Plaintiff argues that he has been unduly prejudiced by years of litigation that could have been avoided if defendant had timely asserted its arbitration rights. (Opposition 5, ECF No. 98.) Numerous opinions, including St. Agnes, teach that arbitration offers important public policy benefits in the form of speed and cost savings. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate . . ., [a party] trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration"). While "[c]ourts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses," St. Agnes, 31 Cal.4th at 1203, this is not a license for parties to litigate for years on end and then suddenly invoke arbitration. Defendant's belated assertion of its arbitration rights has slowed the resolution of the underlying dispute and has forced all of the parties, and this

22

1   court, to incur unnecessary costs. Tellingly, at the September 4,

2   2012 status conference, when the court met with the parties to set

3   a schedule for plaintiff to move for class certification, defendant

4   did not even mention that it was considering arbitrating this

5   matter. This litigation has been active for some 28 of the 59

6   months since it was filed. Defendant did not give plaintiff any

7   indication of its intention to arbitrate until almost 57 months

8   into the litigation.[5] It is striking that defendant sought to

9   invoke its right to arbitrate on November 27, eight days before

10  plaintiff's motion for class certification was filed (pursuant to

11  court order), and that its November 29 written arbitration demand

12  gave plaintiff only one day to respond. Given that defendant filed

13  the instant motion (consisting of 17 pages of legal argument and

14  two supporting declarations) on December 4, it is reasonable to

15  infer that defendant began preparing the motion in advance of its

16  initial offer to arbitrate. These are not the actions of a party

17  that is serious about honoring a contractual agreement to engage

18  in a "speedy and relatively inexpensive means of dispute

19  resolution," St. Agnes, 31 Cal.4th at 1204 (internal quotation and

20  citation omitted).

21      A long line of California Supreme Court cases holds that a

22

23      [5] Defendant argues that any costs or expenses incurred by
    plaintiff or his attorneys during litigation are "self-inflicted
24  wounds" since defendant knew he had signed an arbitration
    agreement, yet chose to pursue his claims in court. This argument
    is unavailing, as plaintiff denies ever having signed the
25  Agreement.  Moreover, in any event, defendant's delay would
    reasonably mean to plaintiff that defendant was not seeking to use
26  arbitration rather than litigation.

1  party can waive its right to arbitrate through bad faith conduct.

2  See St. Agnes, 31 Cal.4th at 1196 ("The decisions likewise hold

3  that the 'bad faith' or 'wilful misconduct' of a party may

4  constitute a waiver and thus justify a refusal to compel

5  arbitration") (quoting Davis, 25 Cal.3d at 425-6); Christensen, 33

6  Cal.3d at 781 ("[W]hile there is no 'single test' for establishing

7  waiver, the relevant factors include whether the party seeking

8  arbitration . . . has acted in 'bad faith' or with 'wilful

9  misconduct'"); Keating v. Superior Court, 31 Cal.3d 584, 605 (1982)

10 (same); I.A.T.S.E. v. Color Corp. Amer., 47 Cal.2d 189 (1956) ("If

11 the [arbitration] provision is not itself repudiated and the issue

12 that is raised by the alleged breach is one that is within the

13 coverage of the provision, the defendant should be supported in

14 insisting on arbitration of the issue unless his bad faith and

15 wilful misconduct are sufficiently obvious to justify a

16 discretionary refusal of such support") (citing Corbin on

17 Contracts). If one is to take seriously the view that arbitration

18 is freely-chosen, consensual, and tailored to the parties'

19 desires,[6] then parties wishing to arbitrate disputes should be

20 required to invoke their rights with some measure of good faith.

21 The alternative is to encourage parties to lull their opponents

22 into believing that a dispute will be litigated, while they wait

23

24    [6] See, e.g., Stolt-Nielsen S.A. v. AnimalFeeds International
      Corp.,559 U.S. __ , 130 S.Ct. 1758, 1773 (2010) ("Underscoring the
25    consensual nature of private dispute resolution, we have held that
      parties are generally free to structure their arbitration
26    agreements as they see fit.").

1    for an opportune moment to spring the trap door of arbitration.

2        This court will not countenance sandbagging. I find that the

3    plaintiff herein has been prejudiced by defendant's conduct, and

4    in light of the factors discussed above, that defendant has waived

5    its right to arbitrate this dispute.

6    **V. CONCLUSION**

7        Plaintiff disputes signing the Agreement, and argues that it

8    is therefore unenforceable. The court need not reach this argument.

9    Even if the Agreement is enforceable, defendant has waived its

10   arbitration rights thereunder.

11       The court also need not reach the following issues:

12   •    Defendant's evidentiary objections. (ECF No. 101-1.)

13   •    Plaintiff's argument that <u>Gentry</u>, 42 Cal.4th at 443, is

14        still good law, and that he has made a sufficient

15        showing to find a waiver of classwide arbitration

16        unenforceable thereunder.

17   •    Plaintiff's argument that, under <u>Brown v. Ralphs Grocery

18        Co.</u>, 197 Cal.App.4th 489 (2011), employees cannot be

19        compelled to individually arbitrate PAGA claims.

20       Plaintiff's motion for class certification remains under

21   submission.

22       The court hereby orders that defendant's motion to compel

23   individual arbitration, strike class allegations, and stay or

24   dismiss the proceedings herein is DENIED in its entirety.

25       IT IS SO ORDERED.

26       DATED:  February 13, 2013.

25

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT