1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10
                                      ----oo0oo----
11

12   JOSE ONTIVEROS,                      CIV. NO. 2:08-567 WBS DAD

13              Plaintiff,                MEMORANDUM AND ORDER RE: MOTION
                                          FOR FINAL SETTLEMENT APPROVAL
14        v.

15   ROBERT ZAMORA; ZAMORA
     AUTOMOTIVE GROUP; STOCKTON
16   AUTO CARS, INC., dba Stockton
     Honda & Stockton Mazda; AUTO
17   TOWN, INC., dba Toyota Town &
     Stockton Scion; HAMMER LANE
18   VOLKSWAGEN, INC.; QUALITY
     MOTOR CARS OF STOCKTON, dba
19   Acura of Stockton, Go
     Hyundai, & Kia of Stockton;
20   SATURN OF STOCKTON, dba
     Saturn of Modesto; LODI
21   MOTORS INC., dba Lodi Honda;
     MERCED AUTO CARS, INC., dba
22   Merced Toyota & Merced Scion;
     CLOVIS AUTO CARS, INC., dba
23   Clovis Volkswagen; and
     COUNTRY NISSAN, dba Nissan
24   Kia Country,

25              Defendants.

26

27                                    ----oo0oo----

28              Plaintiff Jose Ontiveros brought this wage-and-hour

                                          1

1   action on behalf of himself and a putative class of approximately

2   three hundred similarly situated service technicians at

3   automotive dealerships affiliated with defendant Zamora

4   Automotive Group ("ZAG"), which operates numerous automotive

5   dealerships located throughout the San Joaquin Valley.  Over six

6   years after the litigation commenced, the parties agreed to

7   settle the action on a class-wide basis.  The court granted

8   preliminary approval of the $2,000,000 settlement.  (July 7, 2014

9   Order (Docket No. 137).)  The parties now move jointly for final

10   approval of that settlement pursuant to Federal Rule of Civil

11   Procedure 23(e).

12   I.   <u>Factual and Procedural History</u>

13         Plaintiff worked at Stockton Honda, a ZAG-affiliated

14   dealership, for seven months in 2007.  (Ontiveros Decl. ¶ 2

15   (Docket No. 75-6).)  Plaintiff alleges that he and other

16   technicians employed at ZAG-affiliated dealerships were paid

17   using a piece-rate scheme that failed to compensate employees for

18   the actual time they worked.  (<u>Id.</u> ¶ 4; <u>see also</u> Feb. 20, 2009

19   Order re: Mot. for J. on Pleadings at 5 ("Although not pled in

20   detail in plaintiff's complaint, plaintiff and defendants both

21   agree that the corporate defendants used a 'flag rate' or 'piece

22   rate' compensation system for the automobile mechanics they

23   employed.") (Docket No. 29).)

24         In his Second Amended Complaint ("SAC"), plaintiff

25   alleges that defendants' compensation practices violated both

26   federal and state wage-and-hour statutes and asserts ten claims

27   under California law.[1]  While plaintiff does not assert a claim

28

---

[1]   Those claims include: (1) unlawful business practices

1  under the FLSA, he does allege that defendants' failure to comply

2  with the FLSA constitutes an unlawful business practice under

3  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

4  Code §§ 17200 et seq.

5           This action was previously assigned to another district

6  judge.  Prior to reassignment, the court denied in part

7  defendants' motion for judgment on the pleadings and held that

8  plaintiff had stated plausible claims that defendants'

9  compensation practices were unlawful.  (Docket No. 29.)  The

10  court stayed the case in 2010 pending the resolution of a related

11  insurance-coverage case in state court and subsequently lifted

12  that stay on July 26, 2012.  (Docket Nos. 51, 58, 64.)  In

13  December 2012, plaintiff moved for class certification and

14  defendants moved to compel individual arbitration of plaintiff's

15  claims.  (Docket Nos. 72-73.)  The court denied defendants'

16  motion to compel arbitration, and defendants timely appealed.

17

18  under California Business & Professions Code sections 17200 et
    seq. based on violations of the Fair Labor Standards Act
19  ("FLSA"), 29 U.S.C. §§ 201 et seq.; (2) failure to pay overtime
    wages under section 1194(a) of the California Labor Code; (3)
20  failure to pay minimum wage under section 1194(a) of the
    California Labor Code; (4) failure to provide rest periods under
21  section 1194(a) of the California Labor Code; (5) unlawful
    kickback payments in violation of sections 221 to 223 of the
22  California Labor Code; (6) failure to pay timely wages due at
    termination in violation of sections 201 to 203 of the California
23  Labor Code; (7) failure to provide accurate employee wage
    statements in violation of sections 1174 and 1175 of the
24  California Labor Code; (8) failure to pay reporting time wages in
    violation of section 1197 of the California Labor Code; (9)
25  unlawful and unfair business practices under California Business
    and Professions Code based on violations of the California Labor
26  Code.  In addition, plaintiff asserts a claim on his own behalf
    under the California Private Attorney General Act, Cal. Labor
27  Code §§ 2698 et seq.  (SAC ¶¶ 41-118 (Docket No. 18).)

28

1    (Docket Nos. 104-05.)  The court once again stayed the case

2    pending the outcome of that appeal.  (Docket No. 118.)

3          Before the Ninth Circuit resolved defendants' appeal,

4    the parties reached a settlement.  (Mallison Decl. ¶¶ 30-36

5    (Docket No. 143), Ex. 1 ("Settlement Agreement" (Docket No.

6    145).)  The Agreement requires defendants to pay $2,000,000 to

7    plaintiff and a class of similarly situated ZAG service

8    technicians.  (Id. ¶ 31.)  After accounting for attorney's fees,

9    civil penalties, taxes, an incentive award to plaintiff, and

10   other administrative expenses, the remainder of the settlement

11   funds will be divided between the class members in proportion to

12   the number of weeks worked during the class period.  (Id. ¶¶ 31-

13   32.)  Any unclaimed settlement funds will be redistributed to

14   class members on a pro rata basis; if there are funds left over

15   after that point, the funds are to be redistributed to designated

16   cy pres beneficiaries.  (Settlement Agreement § III, ¶ E.)  No

17   portion of the settlement fund will revert to defendants.  (Id.)

18         After the parties reached this settlement, plaintiff

19   moved for preliminary approval of the settlement and conditional

20   certification of a class of current and former service

21   technicians pursuant to Federal Rule of Civil Procedure 23.

22   (Docket No. 123.)  The previously-assigned district judge recused

23   himself on June 25, 2014, and the action was subsequently

24   reassigned to the undersigned judge for all further proceedings.

25   (Docket No. 125.)  In its Order granting preliminary approval of

26   a class and collective action settlement, the court provisionally

27   certified the following class: "all nonexempt automotive

28   technicians who have been employed by one or more of the

4

1   defendants at any time between March 12, 2004, through the date

2   on which this Order is signed." (July 7, 2014 Order at 35.)  The

3   court appointed Jose Ontiveros as class representative, the law

4   firm of Mallison & Martinez as class counsel, and Simpluris, Inc.

5   as settlement administrator.  (Id. at 35-36.)  The court also

6   approved the notice of settlement and final approval hearing,

7   share and correction form, and opt-out form.  The court set the

8   final fairness hearing for October 6, 2014.  (Id.)  It directed

9   class counsel to file with the court, within twenty-eight days of

10  the fairness hearing, a petition for an award of attorney's fees

11  and costs; all papers in support of the settlement, incentive

12  award, fees, and costs; and a declaration from the settlement

13  administrator setting forth the services rendered, proof of

14  mailing, a list of all class members who have commented upon or

15  objected to the settlement, and copies of any correction or opt-

16  out forms.

17       After conducting the final fairness hearing and

18  carefully considering the terms of the settlement, the court now

19  addresses whether this collective and class action should receive

20  final certification; whether the proposed settlement is fair,

21  reasonable, and adequate; and whether class counsel's request for

22  attorneys' fees and costs, as well as an enhancement award for

23  the representative plaintiff, should be granted.

24  II.  Discussion

25       Judicial policy strongly favors settlement of class

26  actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268,

27  1276 (9th Cir. 1992).  "To vindicate the settlement of such

28  serious claims, however, judges have the responsibility of

1  ensuring fairness to all members of the class presented for

2  certification."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th

3  Cir. 2003).  Where the "parties reach a settlement agreement

4  prior to class certification, courts must peruse the proposed

5  compromise to ratify both [1] the propriety of the certification

6  and [2] the fairness of the settlement."  Id.

7        The approval of a class action settlement takes place

8  in two stages.  In the first stage of the approval process, as it

9  did here, the court preliminarily approves the settlement pending

10  a fairness hearing, temporarily certifies a settlement class, and

11  authorizes notice to the class.  See Murillo v. Pac. Gas & Elec.

12  Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010).  At the fairness

13  hearing, presently before the court, after notice is given to

14  putative class members, the court entertains any of their

15  objections to (1) the treatment of the litigation as a class

16  action and/or (2) the terms of the settlement.  See Diaz v. Trust

17  Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989)

18  (holding that a court is required to hold a hearing prior to

19  final approval of a dismissal or compromise of class claims to

20  "inquire into the terms and circumstances of any dismissal or

21  compromise to ensure it is not collusive or prejudicial").

22  Following such a hearing, the court must reach a final

23  determination as to whether the parties should be allowed to

24  settle the class action pursuant to the terms agreed upon.  See

25  Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal.

26  2004).

27        A. Use of An Opt-Out Class

28        For reasons discussed in the Order granting preliminary

1  approval, the court permitted plaintiff to seek certification of

2  an opt-out class.  (July 7, 2014 Order at 10.)  Because nothing

3  has come to the court's attention that would change its earlier

4  reasoning, the court permits the same here.

5              B. Final Certification of the Class

6         For certification, a putative class "must meet the four

7  threshold requirements of Federal Rule of Civil Procedure 23(a):

8  numerosity, commonality, typicality, and adequacy of

9  representation.  Moreover, the proposed class must satisfy the

10 requirements of Rule 23(b), which defines three different types

11 of classes." Leyva v. Medline Indus. Inc., 716 F.3d 510, 512

12 (9th Cir. 2013) (citations omitted).  These requirements "demand

13 undiluted, even heightened attention in the settlement context .

14 . . for a court asked to certify a settlement class will lack the

15 opportunity, present when a case is litigated, to adjust the

16 class, informed by the proceedings as they unfold." Amchem

17 Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997).

18              1.  Rule 23(a)

19         Rule 23(a) restricts class actions to cases where:

20      (1) the class is so numerous that joinder of all
        members is impracticable; (2) there are questions of
21      law or fact common to the class; (3) the claims or
        defenses of the representative parties are typical of
22      the claims or defenses of the class; and (4) the
        representative parties will fairly and adequately
23      protect the interests of the class.

24 Fed. R. Civ. P. 23(a).  These requirements are more commonly

25 known as numerosity, commonality, typicality, and adequacy of

26 representation, respectively.  Leyva, 716 F.3d at 512.  While the

27 court must evaluate Rule 23(a)'s requirements independently, they

28 serve a common purpose of "ensur[ing] that the named plaintiffs

                                  7

1  are appropriate representatives of the class whose claims they

2  wish to litigate." <u>Wal-Mart Stores, Inc. v. Dukes</u>, --- U.S. ---,

3  ---, 131 S.Ct. 2541, 2550 (2011).

4          In the court's Order granting preliminary approval of

5  the settlement, the court found that the putative class satisfied

6  the numerosity, commonality, and typicality requirements of

7  23(a).  However, the court expressed concern that the proposed

8  incentive to the class representative, which is unusually high,

9  might create a conflict.  Additionally, the parties' preliminary

10 approval papers, upon which the court relied in making its

11 initial determination, inadvertently discussed 197 class members

12 instead of 300.  (Mem. in Support of Mot. for Final Approval at 1

13 n.1. (Docket No. 144).)  The court is unaware of any changes that

14 would alter its analysis as to typicality and commonality, and

15 because the parties did not indicate at the fairness hearing that

16 they were aware of any such developments, the court finds these

17 requirements have been met.  The court will thus evaluate

18 numerosity and adequacy of representation for purposes of final

19 certification.

20          a.   <u>Numerosity</u>

21     In its preliminary order, the court found the proposed class

22 easily satisfied the numerosity requirement.  (July 7, 2014 Order

23 at 12.)  However, the parties' preliminary approval papers

24 inadvertently discussed 197 class members, and parties now assert

25 there are approximately 300 class members.  (Mem. in Support of

26 Mot. for Final Approval at 1 n.1.)  Because the number of

27 proposed class members is actually greater than that upon which

28 the court granted its preliminary approval of the settlement, the

8

1  court still finds the class satisfies the numerosity requirement

2  of 23(a).  See Collins, 274 F.R.D. at 300 (conditionally

3  certifying a class of 219 employees); Lymburner v. U.S. Fin.

4  Funds, Inc., 263 F.R.D. 534, 539 (N.D. Cal. 2010) (certifying a

5  class of 121 plaintiffs).

6                  b.   Adequacy of Representation

7           Rule 23(a) requires that "the representative parties

8  will fairly and adequately protect the interests of the class."

9  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions

10 determines legal adequacy: (1) do the named plaintiffs and their

11 counsel have any conflicts of interest with other class members

12 and (2) will the named plaintiffs and their counsel prosecute the

13 action vigorously on behalf of the class?"  Hanlon v. Chrysler

14 Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).  These inquiries

15 require the court to consider a number of factors, including "the

16 qualifications of counsel for the representatives, an absence of

17 antagonism, a sharing of interests between representatives and

18 absentees, and the unlikelihood that the suit is collusive."

19 Brown v. Ticor Title Ins. Co., 982 F.2d 386, 390 (9th Cir. 1992).

20 In its Order granting preliminary approval, the court determined

21 that the named plaintiff and his counsel pursued the class's

22 claims with vigor.  (July 7, 2014 Order at 21.)  However, the

23 court was concerned that the proposed incentive award of $20,000

24 to the class representative might create a conflict of interest

25 between the representative and absentees.  (Id. at 17-20.)

26          Incentive awards "are discretionary and are intended to

27 compensate class representatives for work done on behalf of the

28 class, to make up for financial or reputation risk undertaken in

1  bringing the action, and, sometimes, to recognize their

2  willingness to act as a private attorney general." Rodriguez v.

3  West Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009).  The use

4  of an incentive award nonetheless raises the possibility that the

5  named plaintiff's interest in receiving that award will cause his

6  interests to diverge from the class's interest in a fair

7  settlement.  Staton, 327 F.3d at 977-78 (expressing concern that

8  plaintiffs receiving a special incentive might be "more concerned

9  with maximizing [their own] incentives than with judging the

10 adequacy of the settlement as it applies to class members at

11 large").

12         Courts must "scrutinize carefully the awards so that

13 they do not undermine the adequacy of the class representatives."

14 Radcliffe v. Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th

15 Cir. 2013).  "To assess whether an incentive payment is

16 excessive, district courts balance 'the number of named

17 plaintiffs receiving incentive payments, the proportion of the

18 payments relative to the settlement amount, and the size of each

19 payment.'"  Hopson v. Hanesbrands, Inc., Civ. No. 3:08-844 EDL,

20 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (quoting Staton,

21 327 F.3d at 977).  Additionally, the court should consider "the

22 actions the plaintiff has taken to protect the interests of the

23 class, the degree to which the class has benefitted from those

24 actions, the amount of time and effort the plaintiff expended in

25 pursuing the litigation and reasonable fear[s of] workplace

26 retaliation."  Staton, 327 F.3d at 977 (9th Cir. 2003) (quoting

27 Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

28         The parties propose an incentive payment of $20,000 to

1   the named plaintiff, Mr. Ontiveros, (see Mallison Decl. ¶ 310),

2   which comprises 1% of the common fund.  In the event the court

3   grants a lesser amount, the remainder of those funds will be

4   redistributed to other class members.  (Settlement Agreement

5   III(c).)  A this final stage, parties continued to assert that

6   Mr. Ontiveros's efforts warrant the $20,000 award, they also

7   suggest the incentive award could be reduced to $15,000 if

8   needed.  (Mem. in Support of Mot. for Final Approval at 27:13-

9   23.)

10          A $20,000 incentive award consisting of one percent of

11  the common fund is unusually high, and some courts have been

12  reluctant to approve incentive awards constituting such a great

13  portion of the common fund.  See, e.g., Clayton v. Knight

14  Transp., Civ. No. 1:11-00735 SAB, 2013 WL 5877213, at *12 (E.D.

15  Cal. Oct. 30, 2013) (finding in its order granting preliminary

16  approval that a downward adjustment of the plaintiff's incentive

17  award from $7,500 to $3,500 was warranted given the large

18  disproportion of the award to the recovery of the unnamed class

19  members);[2] Ko v. Natura Pet Prods., Inc., Civ. No. 09-2619 SBA,

20  2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that

21  an incentive award of $20,000, comprising one percent of the

22  approximately $2 million common fund was "excessive under the

23

24          [2]     The $7,500 award constituted 2.5% of the common fund of
    $300,000, which had a 40% floor of net distribution to class
25  members.  See Clayton, 2013 WL 5877213, at *2.  In its order
    granting final approval, the Clayton court found there was no
26  reason to reconsider reducing the award and ordered a downward
    departure pursuant to its reasoning at the preliminary stage.
27  See Clayton v. Knight Transp., Civ. No. 1:11-00735 SAB, 2014 WL
    1154098, at *6 (E.D. Cal. Mar. 21, 2014).
28

1    circumstances" and reducing the award to $5,000); <u>Sandoval v.</u>

2    <u>Tharaldson Emp. Mgmt., Inc.</u>, Civ. No. 5:08-482 VAP OP, 2010 WL

3    2486346, at *10 (C.D. Cal. June 15, 2010) (citing cases).

4           Other courts, however, have found awards comprising a

5    significantly high portion of the common fund to be reasonable.

6    <u>See, e.g.</u>, <u>Bond v. Ferguson Enters., Inc.</u>, Civ. No. 1:09-1662 OWW

7    MJS, 2011 WL 2648879, at *2, 15 (E.D. Cal. June 30, 2011)

8    (approving an $11,250 incentive payment to each of the two named

9    plaintiffs despite a $2,250,000 gross settlement); <u>Alvarado v.</u>

10   <u>Nederend</u>, Civ. No. 1:088-1099 OWW DLB, 2011 WL 90228, at *5 (E.D.

11   Cal. Jan. 11, 2011) (finding a $7,500 incentive award to each of

12   the five representatives to be reasonable even where the gross

13   settlement amounted to $505,058.60); <u>Ross v. U.S. Bank Nat'l</u>

14   <u>Ass'n</u>, Civ. No. 3:07-2951 SI, 2010 WL 3833922, at *3 (N.D. Cal.

15   Sept. 29 2010) (approving an award of $20,000 to each of four

16   named plaintiffs where settlement fund was $1,050,000.00, based

17   on their contributions to litigation and the risk that being a

18   class representative would harm their reputation).

19          The named plaintiff appears to have been significantly

20   involved in this litigation.  (Mem. in Support of Mot. for Final

21   Approval at 27:13.)  He estimates he spent 271 hours on his

22   duties as class representative over a period of six years.  (<u>See</u>

23   Ontiveros Decl. ¶ 4.)  Of that total, he spent the greatest

24   portion of time consulting with class counsel (seventy hours);

25   reviewing discovery produced by defendants (sixty hours);

26   communicating with workers about the case (fifty hours); and

27   reviewing records and assisting counsel during the initial

28   investigation (thirty hours).  (<u>See</u> <u>id.</u>)  These are exactly the

1  sort of tasks for which an incentive award is appropriate.  See

2  Staton, 327 F.3d at 977; Rodriguez, 563 F.3d at 958-59.

3       The court disagrees, however, with the parties'

4  appraisal of a fair rate at which to compensate the named

5  plaintiff.  An incentive award of $20,000 compensates Mr.

6  Ontiveros at a rate of $73.80 per hour.  Incentive awards should

7  be sufficient to compensate class representatives to make up for

8  financial risk, see Rodriguez, 563 F.3d at 958-59,--for example,

9  for time they could have spent at their jobs.[3]  Overcompensating

10 named plaintiffs at the expense of a reduction in the common fund

11 available to class remembers could encourage collusion at the

12 settlement stage of class actions where a named plaintiff's

13 interest naturally diverges from that of the class, compromising

14 his role as a judge of adequacy.  See Staton, 327 F.3d at 977-78.

15 The court finds that a downward departure from the award proposed

16 by parties from $73.80 per hour to $50 per hour fairly

17 compensates the named plaintiff for his time and incorporates an

18 extra incentive to participate in litigation.  Multiplying that

19 rate by the 271 hours the named plaintiff spent on litigation,

20 the court finds he would be entitled to an award of $13,550.

21      At oral argument, class counsel indicated that by

22 proceeding on his wage and hour claims as class representative,

23 Mr. Ontiveros relinquished the opportunity to bring several of

24 his own claims relating to alleged uncompensated meal periods.

25 While it is unclear whether those claims would have had merit,

26 the court takes this sacrifice into account when scrutinizing an

27 ─────────────

28      [3]   Mr. Ontiveros indicated that in 2007, his hourly flat
   rate at Zamora was $15 per hour.

13

1  incentive award, <u>see</u> <u>Rodriguez</u>, 563 F.3d at 958-59.  This court

2  will thus elevate the it award it calculated based on an hourly

3  rate to $15,000, accounting for the claims Mr. Ontiveros was not

4  able to bring because he committed to proceeding as the named

5  plaintiff.

6       In light of plaintiff's significant efforts, an award

7  of $15,000 does not appear grossly disproportionate to the

8  estimated average recovery of other individual class members of

9  approximately $3,700,[4] especially given that the highest pro rata

10 settlement share is $14,358.92.  (<u>See</u> Salinas Decl. ¶ 14 (Docket

11 No. 139).)[5]  The court is satisfied that parties provided ample

12 evidence of plaintiff's substantial efforts taken as class

13 representative.  Accordingly, taking into account the reduced

14 incentive, the court finds plaintiff's interests are aligned with

15 the class.  Because the Order granting preliminary approval also

16 found the second step of the adequacy analysis satisfied, (July

17 7, 2014 Order at 21-22), and nothing has come to the court's

18 attention that would change its analysis, the court determines

19 that plaintiff is an adequate class representative.

20            2.   <u>Rule 23(b)</u>

21       An action that meets all the prerequisites of Rule

22

23       [4]   The court notes that the per-member recovery will
   actually be greater, due to the court's reduction of the
24 incentive and attorneys' fees awards.

25       [5]   In their Memorandum in support of their motion for
   preliminary approval, the parties stated the average settlement
26 would be approximately $6,000 per class member.  This figure was
   based on a 200-person class.  Now, parties state the class has
27 approximately 300 members, and therefore the average payout has
   decreased.
28

1   23(a) may only be certified as a class action if it also

2   satisfies the requirements of one of the three subdivisions of

3   Rule 23(b).  Leyva, 716 F.3d at 512.  Plaintiff seeks

4   certification under Rule 23(b)(3), which provides that a class

5   action may be maintained only if (1) "the court finds that

6   questions of law or fact common to class members predominate over

7   questions affecting only individual members" and (2) "that a

8   class action is superior to other available methods for fairly

9   and efficiently adjudicating the controversy."  Fed. R. Civ. P.

10  23(b)(3).

11       In its Order granting preliminary approval of the

12  settlement, the court found that both prerequisites of Rule

13  23(b)(3) were satisfied.  (July 7, 2014 Order at 21-24.)  The

14  court is unaware of any changes that would affect this

15  conclusion, and the parties indicated at the fairness hearing

16  that they were unaware of any such developments.  There were no

17  objections by individual class members who claimed to have an

18  interest in controlling the prosecution of this action or related

19  actions.[6]  Because the settlement class satisfies Rule 23(a) and

20  23(b)(3), the court will grant final class certification.

21            3.   Rule 23(c)(2) Notice Requirements

22       If the court certifies a class under Rule 23(b)(3), it

23  "must direct to class members the best notice that is practicable

24  under the circumstances, including individual notice to all

25  members who can be identified through reasonable effort."  Fed.

26  _____

27       [6]   Class members who wished to object were directed to
    file their objection with the Court and serve a copy of their
    objection on the parties' attorneys.  The claims administrator

28  indicated that as of September 8, 2014, it had not received any
    objections.  There were no objections voiced at the hearing.

1   R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

2   content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

3   651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

4   417 U.S. 156, 172-77 (1974)).  Although that notice must be

5   "reasonably certain to inform the absent members of the plaintiff

6   class," actual notice is not required.  Silber v. Mabon, 18 F.3d

7   1449, 1454 (9th Cir. 1994) (citation omitted).

8        As provided by the Settlement Agreement, the settlement

9   administrator, Simpluris, mailed notice of the settlement to the

10  last known address of all class members.  (Salinas Decl. ¶ 8.)

11  Simpluris used its best efforts to locate updated addresses for

12  class members by updating the class list in accordance with the

13  National Change of Address Database.  (See id. ¶ 7.)  If a class

14  member's notice packet was returned as undeliverable without a

15  forwarding address, Simpluris performed an advanced search on

16  those addresses.  (Id. ¶ 9.)  Ultimately, only four notices of

17  307 were undeliverable because Simpluris was unable to find a

18  correct address.  (Id. ¶ 10.)  The court is satisfied that this

19  system of providing notice was reasonably calculated to provide

20  notice to class members and was the best form of notice available

21  under the circumstances.  See Monterrubio, 291 F.R.D. at 443

22  (approving settlement in which Simpluris provided notice by mail

23  to potential class members).

24       Likewise, the notice itself clearly identified the

25  options available to putative class members--do nothing, object,

26  or opt out--and comprehensively explained the nature and

27  mechanics of the settlement in a separate document.  (See

28  Mallison Decl. Ex. A.)  The content of the notice is therefore

16

1    sufficient to satisfy Rule 23(c)(2)(B).  <u>See</u> <u>Churchill Vill.,</u>

2    <u>L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice

3    is satisfactory if it 'generally describes the terms of the

4    settlement in sufficient detail to alert those with adverse

5    viewpoints to investigate and to come forward and be heard.'"

6    (quoting <u>Mendoza v. Tucson Sch. Dist. No. 1.</u>, 623 F.2d 1338, 1352

7    (9th Cir. 1980)).

8        C.    <u>Rule 23(e): Fairness, Adequacy, and Reasonableness of</u>

9    <u>Proposed Settlement</u>

10           Having determined that class treatment appears to be

11   warranted, the court must now address whether the terms of the

12   parties' settlement appear fair, adequate, and reasonable.  In

13   conducting this analysis, the court must balance several factors

14   including

15           the strength of the plaintiffs' case; the risk,
         expense, complexity, and likely duration of further
16       litigation; the risk of maintaining class action
         status throughout the trial; the amount offered in
17       settlement; the extent of discovery completed and the
         stage of the proceedings; the experience and views of
18       counsel; the presence of a governmental participant;
         and the reaction of the class members to the proposed
19       settlement.
20
21   <u>Hanlon</u>, 150 F.3d at 1026.  <u>But see</u> <u>In re Bluetooth Headset Prods.</u>

22   <u>Liab. Lit.</u>, 654 F.3d 935, 946 (9th Cir. 2011) ("The factors in a

23   court's fairness assessment will naturally vary from case to

24   case."); <u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1242

25   (9th Cir. 2003) (noting that a district court may consider "some

26   or all" of these factors) (quoting <u>Torrisi v. Tuscon Elec. Power</u>

27   <u>Co.</u>, 8 F.3d 1370, 1375 (9th Cir. 1993)) (internal quotation marks

28   omitted).

1              1. <u>Terms of the Settlement Agreement</u>

2              The key terms of the Settlement Agreement are as

3    follows:

4         (1) **Settlement Class**: All nonexempt automotive technicians

5    employed by one or more defendants at any time between March 12,

6    2004, and the date of preliminary approval.  (Settlement

7    Agreement § I, ¶ C.)  As of September 8, 2014, there were 307

8    participating class members.  (Salinas Decl. ¶ 14.)

9         (2) **Notice**: Pursuant to the Agreement, the settlement

10   administrator, Simpluris, sent a packet containing a class

11   notice, share and correction form, and opt-out form to all class

12   members after verifying the class list with the National Change

13   of Address Database.  (<u>Id.</u> ¶ 5-7.)  For the reasons previously

14   discussed, the court found that notice under the agreement

15   complied with Rule 23(c)(2).  <u>See</u> <u>supra</u> Part B.3.

16        (3) **Opt-Out Procedure**: To opt out of the settlement, a class

17   member was required to submit and sign an opt-out form and mail

18   that form to the settlement administrator no later than forty-

19   five days after the administrator mailed the class notice packet.

20   A class member who did not do so automatically became part of the

21   settlement class and will be bound by all terms and conditions of

22   the Settlement Agreement, including release of claims.

23   (Settlement Agreement § III, ¶ G.4.b.)  Simpluris received no

24   requests for exclusion from the Settlement.  (Salinas Decl. ¶

25   13.)

26        (4) **Objections to Settlement**: Any individual class member

27   could object to or comment on the settlement so long as he or she

28   filed and served a copy of the comment or objection no later than

1    sixty days after the court granted preliminary approval.  Any

2    objection not filed by that deadline was deemed waived.

3    (Settlement Agreement § III, ¶ G.4.a.)  At the fairness hearing,

4    no objections were voiced.

5           (5) **Settlement Amount**: Defendants have agreed to pay a gross

6    settlement amount of $2,000,000.  (Id. § III, ¶¶ B-C.)  That

7    amount shall be used to satisfy the claims of all participating

8    settlement members, class counsel's litigation expenses, any

9    award of attorney's fees to class counsel, an incentive award to

10   plaintiff, a payment to the state of California in satisfaction

11   of plaintiff's Private Attorney General Act claim, payroll taxes

12   on the portion of the settlement fund designated as wages, and

13   claims administration expenses.  (Id.)  The settlement

14   administrator calculates that after all other payments are

15   deducted, the net settlement amount available to pay

16   participating class members is $1,135,118.47.  (Salinas Decl. ¶

17   14.)[7]

18          (6) **Attorney's Fees and Incentive Award:** Plaintiff and class

19   counsel request a fee award of 33.3% of the settlement fund,

20   expenses and costs of $50,000, and an incentive award for the

21   named plaintiff of $20,000.  Defendants agreed not to oppose

22   these requests.  (Settlement Agreement § III, ¶ C.)

23          (7) **Settlement Distribution**: Settlement funds will be

24   distributed on an individualized basis using a formula created by

25   the parties.  That formula will pay each class member a share of

26

27          [7]    Because this Order makes downward adjustments to the
     attorney's fees award and incentive payment, the actual net
28   settlement will be higher than that calculated by the settlement
     administrator.

the settlement fund equivalent to the number of weeks that individual worked during the class period divided by the number of weeks worked by all class members over that period.  One third of each class member's recovery is intended to settle claims for lost wages, and that portion of the recovery shall be subject to tax withholding.  Class members shall be paid by check.  After sixty days, any un-cashed checks will be cancelled and the remaining sum available will be distributed to those class members who did cash their checks.  In the event that any class members fail to cash checks issued in the second round, those funds will be distributed to designated <u>cy pres</u> beneficiaries. (<u>Id.</u> § III, ¶ E.)

     (8) **Release**:  Class members agree to release "any and all claims, debts, liabilities, guarantees, costs, expenses, attorney's fees, damages, actions, or causes of action set forth in the Second Amended Complaint."  (<u>Id.</u> § III, ¶ H.)  The release excludes "all other claims, including but not limited to retaliation, discrimination, unemployment, disability, and workers' compensation."  (<u>Id.</u>)  In addition, plaintiff agrees to execute a general release of all claims against defendants and to waive any rights he may retain against defendants under section 1542 of the California Civil Code.  Defendants agree to execute a corresponding general release of any claims against plaintiff and to dismiss their pending appeal to the Ninth Circuit.  (<u>Id.</u>)

          2. <u>Rule 23(e) Factors</u>

               a. <u>Strength of Plaintiff's Case</u>

     An important consideration is the strength of the plaintiff's case on the merits balanced against the amount

1    offered in the settlement.  DIRECTV, 221 F.R.D. at 526.  The

2    district court, however, is not required to reach any ultimate

3    conclusions on the merits of the dispute, "for it is the very

4    uncertainty of outcome in litigation and avoidance of

5    wastefulness and expensive litigation that induce consensual

6    settlements."  Officers for Justice v. Civ. Serv. Comm'n of City

7    & Cty. of S.F., 688 F.2d 615, 625 (9th Cir. 1982).

8            Plaintiff's claims that defendants' piece-rate

9    compensation practice was unlawful survived defendants Stockton

10   Motor Cars and Zamora's motion for judgment on the pleadings.

11   (See Feb. 20, 2009 Order (Docket No. 29).)  In the order denying

12   defendants' motion in part, the judge previously assigned to this

13   case found that both plaintiff and defendants agree that the

14   corporate defendants used a pure piece-rate system to compensate

15   employees.  (Id. at 5.)  Defendants argued the system was lawful,

16   but the court rejected that argument.  (See id. at 6 ("It appears

17   that plaintiff has alleged a valid theory of recovery on this

18   issue such that judgment on the pleadings is not appropriate."))

19   With respect to its claim based on defendants' piece-rate system,

20   at least, plaintiff appears to have a strong case.

21           Plaintiff also filed declarations in support of his

22   motion for class certification revealing that defendants'

23   compensation policies did not provide payment to employees for

24   time not spent on piece-rate work.  (Pl.'s Mem. in Support of

25   Class Certification at 4:23-5:5 (Docket No. 47).)  That fact, if

26   true, would strengthen plaintiff's case.  Additionally,

27   plaintiffs, having reviewed employee time cards through

28   discovery, stated it was possible to use those cards as a basis

                                   21

1   for determining precisely the amount of unpaid time for each

2   employee on every day during the class period.  (Id. at 7:4-6.)

3   Because the action was stayed pending the outcome of the Ninth

4   Circuit appeal, defendants never filed an opposition to the

5   motion for class certification and thus had no opportunity to

6   dispute those facts.

7        On balance, the record suggests plaintiff presented a

8   strong case, although the facts remain undeveloped at this early

9   stage of the litigation.  The court will consider the relative

10  strength of plaintiff's case together with risks weighing against

11  it.

12           b. Risk, Expense, Complexity, and Likely Duration

13                  of Further Litigation

14       The named plaintiff signed an employment agreement

15  containing an arbitration provision.  (See Joy Decl. Ex. A

16  (Docket No. 72-2).)  On that basis, defendants moved to compel

17  arbitration, (Docket No. 72), but the previous judge assigned to

18  this case denied the motion, (Docket No. 104).  At the time the

19  parties moved for the court's preliminary approval of their

20  settlement, (see Docket No. 12), defendants' appeal concerning

21  the enforceability of an arbitration clause in the plaintiff's

22  employment agreement was pending before the Ninth Circuit.

23  (Mallison Decl. ¶ 40.)  Before the Ninth Circuit heard the

24  matter, the parties reached settlement and stipulated to a

25  voluntary dismissal of the appeal.  (Docket No. 124.)

26       Class counsel state that if defendants had prevailed on

27  appeal, there would not likely have been any method by which

28  plaintiffs could litigate this case on a class basis.  (Mem. in

22

1   Support of Mot. for Final Approval at 12:23-25.)   The Order

2   denying defendants' motion to compel arbitration noted that while

3   the agreement signed by plaintiff did not include an express

4   class arbitration waiver, it was possible that the provision's

5   language implicitly waived the right to proceed as a class.

6   (Feb. 14, 2013 Order at 5 n.2 (Docket No. 104) (citing Kinecta

7   Alt. Fin. Solutions, Inc. v. Superior Court, 205 Cal. App. 4th

8   506, 518-19 (2d Dist. 2012); Reyes v. Liberman Broad., Inc., 208

9   Cal. App. 4th 1537 (2d Dist. 2012), review granted and opinion

10   superseded by Reyes v. Liberman Broad., Inc., 288 P.3d 1287

11   (2012), review dismissed and remanded in light of Iskanian v. CLS

12   Transp. of Los Angeles, 327 P.3d 129 (2014), 331 P.3d 1273

13   (2014).)

14        Having determined the parties intended the California

15   Arbitration Act's ("CAA") procedural rules to govern the

16   agreement, the court interpreted the arbitration agreement under

17   the Federal Arbitration Act ("FAA") but applied the CAA where the

18   two statutes conflicted.   (Feb. 14, 2013 Order at 10:17-24.)   The

19   court found defendants did not act diligently to exercise their

20   right to arbitrate the dispute, (id. at 19:19-20 (citing St.

21   Agnes Med. Ctr. v. Pacificare of Cal., 31 Cal. 4th 1187, 1196

22   (2003))), acted inconsistently with the right to arbitrate by

23   evincing an intent to litigate, (Feb. 14, 2013 Order at 20:10-

24   18), and engaged in bad faith conduct, prejudicing plaintiff,

25   (id. at 25:2-4).

26        It is impossible for the court to predict with

27   certainty whether defendants would have prevailed on appeal, but

28   it is not required to do so, see Officers for Justice 688 F.2d at

1  625.  The court concludes defendants' appeal introduced risk to

2  the litigation because an opinion from the Ninth Circuit in

3  defendants' favor could have impaired plaintiffs' ability to

4  proceed as a class.  This risk weighs in favor of finding the

5  settlement fair, adequate, and reasonable.

6                    c. Risk of Maintaining Class Action Status

7                         Throughout Trial

8            The court is unaware of any foreseeable difficulty the

9  class might have in maintaining class-action certification at

10 trial.[8]  Accordingly, the court will not consider this factor in

11 assessing the settlement.  See Linney, 151 F.3d at 1242.

12                    d. Amount Offered in Settlement

13           "In assessing the consideration obtained by the class

14 members in a class action settlement, 'it is the complete package

15 taken as a whole, rather than the individual component parts,

16 that must be examined for overall fairness.'"  DIRECTV, 221

17 F.R.D. at 527 (quoting Officers for Justice, 688 F.2d at 628).

18 "[I]t is well-settled law that a proposed settlement may be

19 acceptable even though it amounts to only a fraction of the

20 potential recovery that might be available to the class members

21 at trial."  DIRECTV, 221 F.R.D. at 527 (citing cases).

22           The gross settlement will cover the employer payroll

23 taxes on the settlement shares; a $40,000 payment to the

24 California Labor and Workforce Development Agency for civil

25 penalties; the incentive payment to the named plaintiff;

26 ───────────────────

         [8]     Parties state "there is no guarantee of continued class
27 certification relating to a myriad legal and factual issues in
   this case" but give no concrete basis for doubting that class
28 members would be able to maintain certification.

settlement administration costs of $9,700; payment of the
$666,667 in fees class counsel is requesting; and $50,000 in
costs.  (Salinas Decl. ¶ 14.)   The settlement administrator
estimates the net settlement, or the amount paid to participating
class members, is $1,135,118.47.  (Id.)  As of the time of the
fairness hearing, 307 members have opted into the class, and the
estimated average settlement share for a class member is
approximately $3,680.19.  (Salinas Decl. ¶ 14.)[9]

According to class counsel, the primary claim in this
case involved approximately 3 to 4 million dollars in wage
liability.  (Mallison Decl. ¶ 44.)  The court finds no reason to
doubt class counsel's assertion that a $3,680.19 average payout
is a good result in a wage and hour case involving blue collar
workers.  (Mem. in Support of Mot. for Final Approval 12:27-28.)
Additionally, class counsel's proposed formula for apportioning
the settlement to class members appears to be well-researched.
(See Mallison Decl. ¶ 34.)  Although the court is ill equipped to
conclude how the $3,680.19 average payout compares to actual
damages recoverable at trial, the overall terms of the settlement
appear fair, see DIRECTV, 221 F.R.D. at 527.

e. Extent of Discovery and the State of the
Proceedings

A settlement that occurs in an advanced stage of the
proceedings indicates the parties carefully investigated the
claims before reaching a resolution.  Alberto v. GMRI, Inc., Civ.
No. 07-1895 WBS DAD, 2008 WL 4891201, at *9 (E.D. Cal. Nov. 12,

_____

[9]     The net settlement amount and average share will
increase due to the court's reduction of the plaintiff's
incentive award and attorneys' fees.

25

1  2008).

2          After filing the SAC, class counsel conducted discovery

3  and non-discovery investigation regarding class certification and

4  the merits of their claims.  (Mem. in Support of Mot. for Final

5  Approval at 3:25-26.)  Counsel scanned 142,700 pages of payroll

6  and timekeeping documents, which involved four months of

7  photocopying, printing, and organizing.  (Id. at 3:27-4:4.)

8  Plaintiffs believed these materials provided them a basis for

9  determining precisely the amount of unpaid time for each employee

10  on every day during the class period.  (Pl.'s Mem. in Support of

11  Class Certification at 7:4-6.)

12          Additionally, the parties engaged in four full days of

13  mediation and incorporated their mediator's proposals in their

14  settlement agreement.  (See id. at 15:14-15.)  The parties use of

15  mediation, which took place after significant discovery, and

16  their reliance on the mediator's proposal in settling

17  demonstrates the parties considered a neutral opinion in

18  evaluating the strength of their arguments.  See Murillo v. Pac.

19  Gas & Elec. Co., Civ. No. 2:08-1974 WBS GGH, 2010 WL 2889728

20  (July 21, 2010).  Accordingly, the parties' apparent careful

21  investigation of the claims and their resolution in consideration

22  of the views of a third party mediator weigh in favor of

23  settlement.

24                  f. Experience and Views of Counsel

25          Class counsel indicate that they have extensive

26  experience litigating wage-and-hour class actions; since starting

27  their firm in 2005, they have litigated over sixty wage-and-hour

28  class actions and have brokered seven-figure settlements in at

1    least five of those cases.  (Mallison Decl. ¶ 6.)  Counsel

2    believes the settlement provides for substantial recovery in

3    light of numerous factors, including the risks of significant

4    delay, defendants' defenses, and the merits of the (now-

5    dismissed) Ninth Circuit appeal.  (Id. at ¶¶ 39-40.)  The court

6    gives considerable weight to class counsel's opinions regarding

7    the settlement due to counsel's experience and familiarity with

8    the litigation.  Counsel's assertion that the settlement is fair,

9    adequate and reasonable is a factor supporting the court's final

10   approval of the agreement.  See Hanlon, 150 F.3d at 1026.

11                  g. Presence of a Government Participant

12        No government entity participated in this case.

13   However, plaintiff brought claims under the California Private

14   Attorney General Act of 2004, Cal. Labor Code § 2698 et seq,

15   ("PAGA").  Because plaintiff will share civil penalties of

16   $40,000 with the State of California, this factor weighs in favor

17   of approval of the settlement.  See Adoma v. Univ. of Phoenix,

18   Inc., 913 F. Supp. 2d. 964, 977 (E.D. Cal. Dec. 20, 2012)

19   (Karlton, J.) (weighing civil penalties paid pursuant to PAGA in

20   favor of settlement approval).

21                  h. Reaction of the Class Members to the Proposed

22                     Settlement

23        The settlement administrator identified 307

24   participating class members and reported only four notices that

25   were undeliverable because it was unable to find a correct

26   address.  (Salinas Decl. ¶ 9.)  As of this date, the court is

27   unaware of any class member who has filed an objection to the

28   settlement.  "It is established that the absence of a large

                                27

1    number of objections to a proposed class action settlement raises

2    a strong presumption that the terms of a proposed class

3    settlement action are favorable to the class members." DIRECTV,

4    221 F.R.D. at 529.  Accordingly, this factor weighs in favor of

5    the court's approval of the settlement.

6         Having considered the foregoing factors, the court

7    finds the settlement is fair, adequate, and reasonable pursuant

8    to Rule 23(e).  See Hanlon, 150 F.3d at 1026

9         D.   Attorney's Fees

10        If a negotiated class action settlement includes an

11   award of attorney's fees, that fee award must be evaluated in the

12   overall context of the settlement.  Knisley v. Network Assocs.,

13   312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio, 291 F.R.D. at

14   455.  The court "ha[s] an independent obligation to ensure that

15   the award, like the settlement itself, is reasonable, even if the

16   parties have already agreed to an amount."  In re Bluetooth

17   Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

18        The Ninth Circuit has approved two methods of assigning

19   attorney's fees in common fund cases: the "percentage of the

20   fund" method and the "lodestar" method.  Vizcaino v. Microsoft

21   Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing In re Wash.

22   Pub. Power Supply Sys. Litig., 19 F.3d 1291, 1295-96 (9th Cir.

23   1994)).  The district court has discretion in common fund cases

24   to choose either method.  Vizcaino, 290 F.3d at 1047.

25        Under the percentage method, the court may award class

26   counsel a percentage of the common fund recovered for the class.

27   Id.  The percentage method is particularly appropriate in common

28   fund cases, where "the benefit to the class is easily

28

1   quantified." Bluetooth, 654 F.3d at 942.  The Ninth Circuit has

2   approved a "benchmark" percentage of 25%, and courts may adjust

3   this figure upwards or downwards if the record shows "'special

4   circumstances' justifying a departure." Id. (quoting Six (6)

5   Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th

6   Cir. 1990)).  In deciding whether to depart from the 25%

7   benchmark, a district court may take into account "the result

8   achieved, the risk involved in the litigation, the skill required

9   and quality of work by counsel, the contingent nature of the fee,

10  awards made in similar cases, and the lodestar crosscheck."

11  Nwabueze v. AT&T, Inc., Civ. No. 3:09-1529 SI, 2013 WL 6199596,

12  at *10 (N.D. Cal. Nov. 27, 2013).  The Ninth Circuit has

13  permitted courts to award attorney's fees using this method "in

14  lieu of the often more time-consuming task of calculating the

15  lodestar." Bluetooth, 654 F.3d at 942.

16         The court will adopt the "common fund" model and

17  incorporate a lodestar cross-check.  In its order granting

18  preliminary approval, the court expressed reservation regarding

19  class counsel's request for a percentage award of 33.3%.  While

20  some courts have approved percentage awards that high, awards of

21  that size are generally disfavored unless they are corroborated

22  by the lodestar or reflect exceptional circumstances.  See, e.g.,

23  Adoma, 913 F. Supp. 2d at 982-83 (rejecting class counsel's

24  argument that a 33.3% award was appropriate and distinguishing

25  cases); Monterrubio, 291 F.R.D. at 457-58 (same).  The court

26  preliminarily approved the award on the understanding that class

27  counsel should be prepared to demonstrate on or before the

28  fairness hearing that the 33.3% award is reasonable in light of

1    the hours expended and the circumstances of the case.  (July 7,

2    2014 Order at 34.)

3            1. Reasonableness of the Percentage

4            Class counsel argues that the requested fee of 33.3%,

5    or $666,667 is reasonable in light of several factors.  First,

6    class counsel points out that they achieved excellent results.

7    (Mem. in Support of Final Approval at 21:25.)  Counsel compares

8    the $2 million settlement to the $3-4 million estimated value of

9    the class members' primary claim.  (Id. at 21:26-22:5.)  Class

10   counsel asserts that undertaking this case was risky because the

11   underlying legal theories had never before been tested, (id. at

12   22:6-10), and by prevailing on those theories, they advanced

13   important developments in California wage-and-hour law, (id. at

14   22:6-23:18).   Counsel also claim they "doggedly pursued" this

15   matter, expending great effort on behalf of the class in

16   reviewing thousands of pages of timekeeping and payroll

17   documents.  (Id. at 23:20-24:4.)  Lastly, counsel state they

18   expended significant time and resources with no guarantee

19   plaintiffs would ever obtain recovery.  (Id. at 24:6-14.)[10]

20   _____

21        [10]   Class counsel states the firm has "routinely received
     fee awards in excess of the [25%] benchmark."  (Mem. in Support
22   of Final Approval at 20:15.)  However, in three of four of these
     cases, the 33.3% class counsel was seeking was less than the
23   asserted lodestar.   See Alvarado et. All v. Rex Nederend, Civ.
     No. 1:08-1099 OWW DLB, 2011 WL 1883188, at *8 (E.D. Cal. May 17,
24   2011) (noting a 33.3% portion of settlement was "significantly
     less" than class counsel's asserted lodestar); Vasquez v. Coast
25   Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. Mar. 9,
     2010) (Wanger, J.) (noting 33.3% portion was "significantly less"
26   than the asserted lodestar); (Mem. in Support of Final Approval
     at 18:26, Chavez et al. v. Petrissans et al., Civ. No. 1:08-122
27   LJO GSA (E.D. Cal. 2009) (noting 33.3% amounted to 65% of the
     lodestar)).  In the fourth case, counsel noted the 33.3% portion
28   or $133,333 "roughly correspond[ed]" to the asserted lodestar of

                                    30

1        The court hesitates to characterize some of these

2  circumstances as special so as to justify a departure from the

3  25% benchmark.  While the court notes class counsel's diligence

4  during discovery, their experience and reputation, their

5  successes in opposing a motion for judgment on the pleadings and

6  a motion to compel arbitration, (see Docket Nos. 29, 104), the

7  size of the gross settlement, and their outlay of time and

8  resources with no guarantee of recovery, counsel has not

9  demonstrated how these factors constitute "special circumstances"

10  that are not typically present in other common fund cases.

11        The novelty of class counsel's legal arguments may

12  constitute "special circumstances" justifying a departure from

13  the benchmark.  Counsel states his firm "undertook this wage and

14  hour class action at a time in which the underlying theories of

15  liability had never been tested."  (Mem. in Support of Final

16  Approval at 22:6-10.)  Citing cases, counsel indicates the firm's

17  novel piece-rate theory, which alleged defendant Zamora's wage

18  formula failed to compensate plaintiff for rest breaks and

19  essential tasks, impacted California labor law.  (See id. at

20  22:11-23:18.)  The court finds counsel's novel theory may

21  constitute a "special circumstance."  See Teitelbaum v. Sorenson,

22  648 F.2d 1248, 1250 ("Actions based on novel legal theories

23  generally require greater attorney effort than actions based on

24  familiar legal theories.")  Nevertheless, because the departure

25  from the benchmark class counsel seeks is significant, the court,

26  in accordance with its Order granting preliminary approval, will

27

28  $120,212.50.  (Mem. in Support of Final Approval at 18:16-17,
Benitez v. Wilbur, Civ. No. 1:08-1122 LJO GSA (E.D. Cal. 2009).)

1    cross-check the requested fees against the lodestar.

2            2. Lodestar Cross-Check

3            Calculation of the lodestar can provide a useful

4    perspective on the reasonableness of a given percentage award.

5    See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir.

6    2002).  Under the lodestar method, the court determines an

7    appropriate attorney's fee by multiplying the number of hours

8    class counsel reasonably expended by a reasonable hourly rate.

9    Id. at 941.  The court may then adjust the lodestar upwards or

10   downwards based on a "host of 'reasonableness' factors."  Id. at

11   942 (citing Hanlon, 150 F.3d at 1029).  While the lodestar method

12   is most often applied in class actions brought under fee-shifting

13   statutes or those where the relief obtained is not easily

14   monetized, it may be used in common fund cases as well.  Id. at

15   941-42.

16           a. Reasonable Rate

17           Class counsel submitted a summary of their lodestar

18   fees to date, which totaled $487,947.  (Mallison Decl. ¶ 47.)

19   The total accounts for the hours of Stan Mallison and Hector

20   Martinez, who both ask for an hourly rate of $650; Marco Palau,

21   asking for a rate of $495; Joseph Sutton, asking for a rate of

22   $425; and Eric Trabucco, asking for a rate of $325.

23           A reasonable rate is typically based upon the

24   prevailing market rate in the community for "similar work

25   performed by attorneys of comparable skill, experience, and

26   reputation."  Chalmers v. City of Los Angeles, 796 F.2d 1205,

27   1210-11 (9th Cir. 1986).  The relevant community is generally the

28   forum in which the court sits.  Barjon v. Dalton, 132 F.3d 496,

                                    32

1    500 (9th Cir. 1997).  Class counsel asserts "the hourly rates for

2    attorney time are reasonable and consistent with attorneys with

3    comparable experience and qualifications in the bay area," (Mem.

4    in Support of Final Approval at 25:17-20), but here the "relevant

5    community" is the Sacramento division of the Eastern District.[11]

6         Although the court has no reason to question class

7    counsel's experience and vigor, counsel has not provided the

8    court with any helpful information regarding the prevailing

9    market rates for similar work performed by competent attorneys in

10   the relevant legal community, and the court must look to other

11   sources.[12]  The rates requested by Mr. Mallison, Mr. Martinez, and

12   Mr. Palau are high for even the most experienced attorneys in the

13   Eastern District.  See Johnson v. Allied Trailer Supply, Civ. No.

14   2:13-1544, 2014 WL 1334006, at *5 (E.D. Cal. Apr. 3, 2014); Joe

15   Hand Promotions, Inc. v. Albright, Civ. No. 2:11-2260, 2013 WL

16   4094403, at *2 (E.D. Cal. Aug. 13, 2013) (citing Eastern District

17   cases in which judges awarded experienced attorneys rates between

18   $275 and $400).  The same is true for the rates the associates

19

---

20   [11]    There is an exception to the local forum rule.
     "[R]ates outside the forum may be used 'if local counsel was
21   unavailable, either because they are unwilling or unable to
     perform because they lack the degree of experience, expertise, or
22   specialization required to handle properly the case.'"  Barjon v.
     Dalton, 132 F.3d 496, 500 (9th Cir. 1997) (quoting Gates v.
23   Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).  Class counsel
     has not suggested that local counsel was unavailable.
24

25   [12]    Class counsel makes references to previous fee awards
     in cases it settled in the Eastern District.  (See Mallison Decl.
26   ¶¶ 10, 11.)  These instances are not instructive, because the
     awards did not result from an adversarial procedure.  Because of
27   the parties' mutual interest in the court approving the agreed
     upon settlement, counsel's request for fees in those cases went
28   unopposed by defendants.

1  are seeking.  A reasonable rate for associates working in this
2  community is typically between $150 and $175 per hour.  <u>See</u> <u>Joe</u>
3  <u>Hand</u>, 2013 WL 4094403, at *3.

4          In the absence from any apposite information provided
5  by class counsel, and for the purposes of conducting a lodestar
6  "cross check," the court will use rates that in the Eastern
7  District of California would be considered among the highest for
8  experienced attorneys as part of its calculations: $400 per hour
9  for Mallison, Martinez, and Palau, and $175 for the other
10 associates.  Both rate levels are generous in light of common fee
11 awards in this district.  <u>See</u> <u>Johnson</u>, WL 1334006, at *5; <u>Joe</u>
12 <u>Hand</u>, 2013 WL 4094403, at *2.

13              b. <u>Reasonable Hours</u>

14          When calculating a lodestar, normally a court may
15 independently scrutinize time sheets to determine whether the
16 hours attorneys are asserting are duplicative or excessive.  <u>See</u>
17 <u>In re Washington Public Power Supply System Securities</u>
18 <u>Litigation</u>, 19 F.3d 1291, 1298 (9th Cir. 1994) (holding the
19 district court acted within the bounds of its discretion in
20 reducing the lodestar for unnecessary and duplicative work).
21 Here, inasmuch as the court will use the lodestar only to "cross-
22 check" the reasonableness of the percentage award, it will accept
23 the total hours provided by counsel.

24              c. <u>Lodestar Calculation</u>

25          The lodestar in this case is thus $323,005.75,
26 calculated as follows:

27              Mallison: 428.75 x $400/hour = $171,500

28              Martinez: 64.85 x $400/hour = $25,940

1          Palau: 246.08 x $400/hour = $98,432

2          Joseph Sutton: 149.05 x $175/hour = $26,083.75

3          Eric Trabucco: 6 x $175/hour = $1,050

4          Even when applying these generous numbers, and taking

5     the "reasonable hours" calculated by counsel at face value, the

6     lodestar is significantly lower than what class counsel is

7     seeking.  A lodestar of $323,005.75 comprises approximately 16%

8     of the common fund, which is notably below the Ninth Circuit

9     benchmark.  By requesting a 33.3% award of $666,667, counsel is,

10    according to these figures, in essence seeking a multiplier of

11    two.

12         As discussed, counsel's novel legal theories and their

13    asserted impact on state labor law could constitute grounds for

14    an upward departure.  However, the court finds that doubling fees

15    in light of this special circumstance would be excessive.  The

16    court accordingly resolves to give class counsel the benchmark

17    award of 25% of the common fund.  Therefore, the court will

18    approve attorneys' fees of $500,000, taking into account a

19    multiplier of approximately 1.54, which brings the fee award up

20    to the Ninth Circuit benchmark.

21              E. Costs

22         "There is no doubt that an attorney who has created a

23    common fund for the benefit of the class is entitled to

24    reimbursement of reasonable litigation expenses from that fund."

25    In re Heritage Bond Litig., 2005 WL 1594403, at *23 (quoting In

26    re Gen. Instruments Sec. Litig., 209 F. Supp. 2d 423, 434 (E.D.

27    Pa. 2001)).  Class counsel has submitted a list of itemized costs

28    relating to scanning, photocopying, mediation, mileage, court

35

1  fees, electronic research, depositions, expert fees, and other

2  office-related costs.  The court finds these are reasonable

3  litigation expenses, and it therefore will grant class counsel's

4  request for compensation in the amount of $50,000.

5                  F. Incentive Payment to Named Plaintiff

6              For the reasons previously discussed, see supra Part

7  II.B.1.b, the court orders that an incentive payment of $15,000

8  be paid to the named plaintiff.

9              IT IS THEREFORE ORDERED that the parties' joint motion

10  for final approval of the class and collective action settlement

11  be, and the same hereby is, GRANTED.

12              IT IS FURTHER ORDERED THAT:

13        (1)   The court has jurisdiction over this action and

14              the parties' settlement under 28 U.S.C. §§ 1331

15              and 1367, as plaintiff's original Complaint was

16              brought under the Fair Labor Standards Act 29

17              U.S.C. §§ 201 et seq; and the court has

18              supplemental jurisdiction over plaintiff's state-

19              law claims;

20        (2)   Solely for the purpose of this settlement, and

21              pursuant to Federal Rule of Civil Procedure 23,

22              the court hereby certifies the following class:

23              all nonexempt automotive technicians who have been

24              employed by one or more of the defendants at any

25              time between March 12, 2004, through July 7, 2014.

26              Specifically, the court finds that:

27              a. the settlement class members are so numerous

28                 that joinder of all settlement class members

```
1               would be impracticable;

2          b. there are questions of law and fact common to

3               the settlement class which predominate over any

4               individual questions;

5          c. claims of the named plaintiff are typical of

6               the claims of the settlement class;

7          d. the named plaintiff and class counsel have

8               fairly and adequately represented and protected

9               the interests of the settlement class; and

10         e. a class action is superior to other available

11              methods for the fair and efficient adjudicating

12              of the controversy;

13     (3)  the court appoints the named plaintiff, Jose

14          Ontiveros, as representative of the class and

15          finds that he meets the requirements of Rule 23;

16     (4)  the court appoints the following lawyers as

17          counsel to the settlement class, and finds that

18          counsel meets the requirements of Rule 23: Stan S.

19          Mallison and Hector R. Martinez, Law Offices of

20          Mallison & Martinez, 1939 Harrison Street, Suite

21          730, Oakland, California 94612;

22     (5)  the settlement agreement's plan for class notice

23          is the best notice practicable under the

24          circumstances and satisfies the requirements of

25          due process and Rule 23.  The plan is approved and

26          adopted.  The Notice to the class complies with

27          Rule 23(c)(2) and Rule 23(e), and is approved and

28          adopted;
```

37

1     (6)   the parties have executed the notice plan in the

2          court's Preliminary Approval Order, in response to

3          which none of the 307 collective class members

4          have opted out or objected.  Having found that the

5          parties and their counsel took extensive efforts

6          to locate and inform all putative class members of

7          the settlement, and given that no class members

8          have filed any objections to the settlement, the

9          court finds and orders that no additional notice

10         to the class is necessary;

11    (7)   all class members who did not opt out from the

12         settlement will receive a settlement share;

13    (8)   class administrator Simpluris, Inc. is awarded

14         $9,700 for their services as settlement

15         administrator;

16    (9)   class representative, Jose Ontiveros, is awarded

17         $15,000 as an incentive payment;

18    (10) class counsel, Mallison & Martinez, is awarded

19         $500,000 of the gross recovery in attorneys' fees

20         and $50,000 in costs;

21    (11) the California Labor Code PAGA payment of $40,000

22         to the State of California is approved;

23    (12) by means of this Final Approval Order, the court

24         enters final judgment in the action, as defined in

25         Rule Federal Rule of Civil Procedure 58(a)(1);

26    (13) this action is dismissed with prejudice, each side

27         to bear its own costs and attorneys' fees except

28         as provided by the settlement and this order;

```
 1                  (14) the court retains jurisdiction to consider all
 2                        further applications arising out of or in
 3                        connection with the settlement.
 4                  LET JUDGMENT BE ENTERED ACCORDINGLY.
 5       Dated:   October 8, 2014
 6
 7                                      WILLIAM B. SHUBB
                                        UNITED STATES DISTRICT JUDGE
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```